THOMAS GOLDEN, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

[1.] When an escape by the prisoner is put in evidence by the State to raise the presumption of conscious guilt, it is competent for the prisoner to rebut it by showing that it was attributable to the fear of serious personal injury from the friends of the deceased, and not from a consciousness of guilt.

[2.] It is not error in the Judge to say I "apprehend" the rule of law to be this It being synonymous with understand, conceive, believe.

[3.] To tell the jury, after charging the law in a criminal case, that they should not differ from the Court on slight or trivial grounds, but should be "clearly satisfied" that the Court was *wrong* before they did so, is objectionable.

[4.] One may kill another against whom he entertains malice, and yet not be guilty of murder.

[5.] There can be no murder without malice, express or implied.
A homicide may be reduced to manslaughter where no actual assault has been committed on the person of the defendant; and where no attempt has been made to commit a serious personal injury upon the accused.

[6.] Drunkenness cannot excuse crime; modern decisions go so far as to hold that drunkenness may be considered on the question whether the prisoner was excited by passion or actuated by malice, in committing a homicide.

[7.] To justify taking human life, the law makes no discrimination in favor of a *drunkard* or a *coward*, or any *particular individual;* but the circumstances must be such as to justify the fears of a *reasonable man.*

Murder, from Marion. Tried before Judge WORRILL, March Term, 1858.

Thomas Golden was put upon his trial for the murder of Nicholas Jordan, and found guilty. Whereupon his counsel moved for a new trial upon the following grounds:

1st. Because the Court erred in refusing to let defendant prove by John Mathews, a witness who had been sworn for the State, that John Eidson said, on the evening of the homicide, that he was the whole cause of it.

2d. Because the Court erred in refusing to let the defendant prove by John Hanks, State's witness, that after he had arrested prisoner, one John Eidson made an attack on prisoner with a knife.

3d. Because the Court erred in its charge to the jury: "You having heard the evidence and the argument, it becomes my duty to give you in charge the rules of the law, by which I apprehend you are to be governed in the decision of the case."

4th. Beause the Court erred in its charge to the jury, "that it is the right of the jury to differ with the Court in its construction of the law, but such difference should not be placed upon light and trivial grounds; you should be clearly satisfied that the Court is wrong before you do this."

5th. Because the Court erred in charging the jury as follows: "Though voluntary drunkenness is no excuse for the commission of a crime in a prosecution for murder, where the question is whether the act was done in a sudden heat of passion, intoxication is a circumstance proper for the consideration of the jury."

6th. Because the Court erred in refusing to charge the jury: "If they believe, from the evidence, that Golden killed Jordan through cowardice, alarm, or fear that great bodily harm or injury was about to be inflicted upon him, then he is guilty of neither murder nor manslaughter, but that he killed him in his own defence."

7th. Because the Court erred in refusing to charge the jury as requested by the prisoner's counsel, "that a man may kill another against whom he has malice, and yet not be guilty of murder; therefore, if the jury believe, from the evidence, that Golden had malice against Jordan, and that Jordan pursued and sought a difficulty with him under such

circumstances as to create apprehension on the part of Golden that a serious bodily harm was about to be perpetrated upon him, then the killing is to be referred to this, and not to malice, and he is not guilty of murder."

8th. Because the Court erred in refusing to charge the jury as requested for the prisoner: " If the jury believe, from the evidence, that the prisoner was very drunk for the purpose, or as an excuse to take the life of Jordan, and that being in a state of intoxication, and very drunk, killed Jordan through cowardice, alarm, or fear that a great bodily injury was about to be inflicted upon him, then he is not guilty of murder."

9th. Because the Court erred in refusing to charge the jury as requested, " that if they believed, from the evidence, that Golden was very drunk, and that in this condition several persons pursued and sought a difficulty with him, it is proper that said drunkenness shall be taken into consideration, and that they shall enquire whether a man in this condition would not sooner apprehend felony or serious bodily harm or injury about to be done him, than if he had been sober, and if they shall so believe, that the killing is to be referred to this, and not to malice or any purpose to kill, and he is not guilty of murder."

10th. Because the Court erred in refusing to charge the jury as requested by prisoner's counsel: " If the jury believe, from the evidence, that the prisoner fired the pistol, and when he did so acted under reasonable apprehension that serious bodily harm or injury was about to be done him, he cannot be guilty of a higher offence than voluntary manslaughter."

11th. Because the Court erred in refusing to charge, " if the jury believe, from the evidence, that the gun or pistol shot wound received by deceased produced his death, and if the jury have a reasonable doubt upon their minds as to whether Golden discharged the gun or pistol which inflic-

ted the wound upon deceased, then they must give the pris-
oner the benefit of the doubt, and find him not guilty."

12th. Because one of the jurors, Slaughter, who tried the
prisoner in said case, stated to Baily R. Gill, at the house of
N. H. Tullis, on Tuesday before the trial, that he had been
summoned as a tales juror in this case, and if he was taken
on the jury he would hang the prisoner or stay there until
the hairs of his arse dragged the ground; the said Slaughter
not being a fair and impartial juror, and had prejudice and
bias resting upon his mind against prisoner, and his mind
was not perfectly impartial between the State and the ac-
cused, the same not being known to the prisoner and his
counsel or either of them before the trial of said case: and in
support of this ground, affidavits of Gill, the defendant, de-
fendant's counsel, Solomon Welch and J. D. Walker, were
filed.

The Court overruled the motion, and defendant's counsel
excepted, and assign error.

H. Holt; and M. Blanford, for plaintiff in error

Solicitor General, Oliver; and Thomas Sloan, for de-
fendant in error.

*By the Court*—Lumpkin, J. delivering the opinion.

The defendant in this case was convicted of murder, and
having been refused a new trial in the Court below, he has
prosecuted a writ of error to obtain one in this Court.

Some of the grounds occupied in the rule for a new trial,
have been abandoned on the argument here; and as to some
of the rest, we deem it unnecessary to notice. It is but a
repetition of the same objection. We propose to consider the
material questions only.

[1.] It is in evidence that after the homicide was commit-
ted and Golden arrested, he made his escape, and was found
crouched under a fence, in the immediate neighborhood.

And this flight, it is contended, on the part of the State, indicated a consciousness of guilt. To rebut this presumption, it was proposed by the prisoner's counsel to prove that a violent assault was made upon the accused, by one of the party, before he fled. And this testimony was rejected.

The point in this case is not very material any way; but as the State deemed it of sufficient importance to prove the escape, it would seem proper to allow the accused to account for it as he proposed to do; and to show that it originated in fear of injury from the surviving companions of the deceased, and not from any consciousness of guilt. At any rate, it was a proper matter to be submitted to the jury.

[2.] As to the complaint against the use of the word "apprehend," we see nothing in that. "My duty," said the Judge, "is to give you in charge the rule of law, by which I *apprehend*"—that is, understand, conceive, believe—"you are to be governed in the decision of this case."

[3.] The next part of the charge we think is objectionable. While the learned Judge admits that it is the right of the jury to differ from the Court in its construction of the law, yet, he says to them, it should not be on slight or trivial grounds; bu tthat they should be clearly satisfied that the Court was wrong, before they did differ.

Why, we respectfully submit, make an issue of this sort, between the Court and the jury? Why compel them to find that his Honor, for whom, as a man and a magistrate, the jury feel, in common with the whole country, the greatest respect, was clearly wrong about the law. The verdict of the jury should embody their opinion of the law, as well as of the facts. And they are not required to be "clearly satisfied" that the Judge is wrong. But if they entertain doubts as to the law, the prisoner is just as much entitled to the benefits of those doubts, as if they applied to the facts. It is impossible for this Court to be more explicit than it has been upon this point. In the case of *Keener vs. The State,* (18 *Ga. Rep.* 194,) the rule upon this subject is elaborated with

great care. The Court, after submitting to the jury, its view of the law—a delicate duty, by the way, under the penal code—should simply say to them: "But, gentlemen, it is made your duty, under the law, to pronounce upon the law, as well as the facts of the case;" and there *leave the matter.*

[4.] We are not clear that the Court intended to repudiate the proposition, that one may kill another against whom he has malice, and yet not be guilty of murder. The bill of exceptions, however, is scarcely susceptible of any other meaning. If he did, it was error. Whenever the circumstances of the killing would not amount to murder, the proof even of express malice will not make it so. One may harbor the most intense hatred toward another; he may court an opportunity to take his life; may rejoice while he is imbruing his hands in his heart's blood; and yet, if, to save his own life, the facts showed that he was fully justified in slaying his adversary, his malice shall not be taken into the account. *This principle is too plain to need amplification.*

[5.] After charging as to the effect of intoxication upon the crime, the Court added, "but drunk or sober, the killing of a human being, in the sudden heat of passion, *without malice express or implied,* will not amount to voluntary manslaughter, unless it appear that the deceased had made some actual assault upon the person of the accused, or that there was an attempt by the deceased to commit a serious personal injury on the accused."

We cannot concur in this charge for several reasons. It asserts, as it stands, what cannot be legally true; namely, that there may be murder without malice. The learned Judge, we are quite sure, did not intend to assert such a doctrine. Again, it maintains that unless the deceased made some actual assault upon the defendant, or intended to inflict a serious personal injury upon him, the homicide cannot be reduced to manslaughter. In the case of *Stokes vs. The State,* *(18 Ga. Rep.* 17,) this Court endeavored to establish, and we think successfully, that this proposition is not true. And

it may not be in the present case, even putting the most favorable construction for the State upon the testimony. Suppose no assault was made by Jordan when he seized the tumbler; still, looking at all that transpired that day, if the effect was to excite beyond control the passion of the prisoner, and yielding to the momentary impulse, surrounded as he was by his enemies, who had followed him to his place of retreat, he killed Jordan, the law, in mercy to his weakness, and in view of the provocation given, might well hold that he shot in sudden heat, and not in the spirit of revenge.

[6.] As to the effect of drunkenness upon crime, we are not prepared to say that the view taken of it by the Judge, was not quite as favorable as the defendant had any right to ask. That drunkenness cannot excuse crime, the code, as well as the common law, is quite explicit. The modern decisions would seem to go to the length of holding, that the drunkenness of the prisoner may be considered on the question, whether the prisoner was excited by passion, or acted from malice. *(32 Engl. Com. L. Rep.* 751 *; 4 Humph. Rep.* 141.*)* The Court gave to the prisoner the benefit of this doctrine; and we are not inclined to interfere with the qualification annexed to it, to-wit: that to entitle the accused to the benefit of this rule, he should strike with a weapon which he casually held or obtained, and not use a pistol or bowie knife, deliberately procured with a view to a rencontre.

[7.] As to all those requests which were based upon the idea, that the circumstances which attended the killing, were sufficient to excite the fears of a drunkard, or a coward, or even of Mr. Golden, the law makes no such discrimination. They must be such as to excite the fears of a *reasonable man.*

As to the competency of the juror, Slaughter, he will not be sworn again to try this cause; and having made so many rulings upon this subject, each depending like this, upon the special facts of the case, we deem it unnecessary to reiterate our opinion upon this vexatious and oft-recurring topic. The conduct of this juror in lying, as he confesses he did, to

avoid the performance of a public duty, is reprehensible in the highest degree; and all similar behavior in future, might well provoke the punitory power of the Court.

Upon the whole, the general impression left upon the mind of the Court, by the proof in this record, is this: Mr. Golden was not without fault upon this tragic occasion. He was willing to engage in combat with any of the party except Jordan. But Jordan was thrust forward, and pressed into the service by his associates, to whip Golden. Jordan acted upon the conviction that Golden was a coward, and that he could be bullied as such. To this impression his death is to be attributed. Thousands have fallen in the same way. Bonaparte lost the empire of the world by underrating his enemy. That Golden might have avoided the catastrophe is probable. That he was crowded by his foes is too obvious, from the proof. How far he is excusable for the death of Jordan, if at all, we refer back, to the decision of another *impartial* jury.

Judgment reversed.