## ADAMS v. THE STATE.

1. Rescue, to be punishable under sections 308 and 309 of the Penal Code, must be of one in lawful custody.

2. It is not a penal offense to liberate one from unlawful custody, although he may have submitted to such custody without resistance.

3. Where the circumstances are such that a lawful arrest can not be made except under warrant, the warrant must, at the time of making the arrest, be in the possession of the arresting officer, or of another in the neighborhood with whom he is acting in concert.    For the purpose of making an arrest, a warrant is not in the possession of the officer when it is in his house some distance from the scene of the arrest.

4. Where one liberates another from a custody which is illegal because the warrant, though in existence, is not in the possession of the arresting officer, and the officer subsequently returns and shows the warrant to the rescuer, the accused not being present, the refusal of the rescuer to permit the execution of the warrant does not, either alone or in conjunction with the previous liberation of the prisoner, constitute a violation of the provisions of the code against the rescue of one in lawful custody.

Argued October 19, — Decided November 10, 1904.

Accusation of rescue.    Before Judge Proffitt.    City court of Elberton.    August 19, 1904.

*Van Duzer & Tutt*, for plaintiff in error.
*T. J. Brown, solicitor*, and *J. N. Worley*, contra.

SIMMONS, C. J.    An accusation was returned against Adams, charging him, under the Penal Code, §§ 308, 309, with having rescued one Dock Shaw while the latter was in lawful custody under legal process.    Adams was found guilty, and moved for a new trial.    The motion was overruled, and the movant excepted. From the evidence it appeared that a warrant had been issued for the arrest of Shaw, charging him with a misdemeanor. The warrant was issued in Elbert county, Georgia, but alleged that the offense had been committed in Hart county, Georgia.    It was directed to "any sheriff or his deputy, coroner, constable, or marshal of said State."    Under this warrant Shaw was arrested in Clarke county and turned over to an Elbert county constable, who brought Shaw and the warrant to Elbert county.    The constable carried Shaw before a magistrate in Elbert county, and Shaw gave bond to appear in Hart county to answer the charge set out in the warrant.    As arresting officer, the constable approved and accepted the bond and gave Shaw his liberty.

Subsequently the constable was informed that the bond was not valid, for the reason that Shaw should, under the Penal Code, § 898, have been carried before a magistrate in the county in which the crime was alleged to have been committed and have there given bond.    The constable thereupon determined to rearrest Shaw.    He found Shaw in the back yard of the home of Adams, in Elbert county.    He touched Shaw upon the shoulder and told him to consider himself under arrest, and to come with him.    They went together into the front yard and found Adams sitting on the front porch.    Shaw, with the constable's consent, went upon the porch and talked with Adams.    The latter then asked the constable if he had a warrant for Shaw.    The officer replied that he had it at his home, but not with him.    In answer to a question by Adams, he stated that it was the same warrant under which Shaw had previously been arrested.    Adams then stated that the warrant was "dead," and that Shaw could not be arrested without a new warrant.    He then pushed Shaw into the house, closed the door, and by threats and offers of violence forced the officer to leave the premises.    The officer did not have the warrant with him at the time, but, after consultation with an attorney, he went to his home, got the warrant, and returned with it to the residence of Adams.    He showed the warrant to Adams and told him that he would have to take Shaw under it.    Adams again insisted that the warrant was "dead," and ordered the officer from his premises.

1. It is apparent from the language of the Penal Code, § 309, that a rescue is not made penal except where the person rescued is in legal custody.    If the detention is illegal or unauthorized by law, then the law does not protect it by making it a crime to liberate the person in custody.    This rule seems to prevail generally.    See People *v.* Ah Teung (Cal.), 15 L. R. A. 190, and cit.

2. Nor does it matter whether the person arrested has made resistance or has submitted passively to the unlawful arrest.    The rescue is not punishable unless the custody is lawful, and the submission of the prisoner does not legalize the arrest or bring the unlawful detention within the protection of the law.    State *v.* Rollins, 113 N. C. 722 (8).    See also State *v.* Beebe, 13 Kans. 589, 19 Am. Rep. 93.

3. We come then to the question whether in the present case

Shaw was legally in custody by virtue of a lawful arrest at the time he was liberated by Adams. Shaw was not charged with a felony, but with a misdemeanor. The offense had not been committed in the presence of the arresting officer, Shaw was not endeavoring to escape, and a warrant had actually been issued for his arrest. Under these circumstances the officer had no authority whatever to arrest Shaw, except under the warrant. Penal Code, § 896. The officer was not bound to show his warrant before making the arrest; but unless he or another in the neighborhood, with whom he was acting in concert, had been in possession of the warrant and in a position to show it upon demand, the arrest was not lawful. The officer did not have the warrant with him, but had it at his home. Just how far from the scene of the arrest his home was situated does not clearly appear, though it seems to have been some distance. At any rate, we think that the officer was not in such possession of the warrant as to derive from it any authority to make the arrest. Nor was the warrant in the possession of another with whom this officer was acting in concert. (See *Robinson* v. *State*, 93 *Ga.* 77.) In Galliard *v.* Laxton, 2 Best & S. 363, 9 Cox's C. C. 127, it was held that, in a case in which a lawful arrest could not be made except under a warrant, the arresting officers were bound to have the warrant ready to be produced if required; that an arrest in such case, by police officers who did not have the warrant in their possession at the time, was illegal, although the warrant had previously been in the possession of one of them and was at the station-house at the time of the arrest, and although no demand was made upon the officers for the production of the warrant; and that, as the arrest was illegal, persons who took the prisoner from the officers could not properly be convicted of rescue. In Codd *v.* Cable, 1 Ex. Div. 352, it was held that one against whom a warrant had issued, charging a misdemeanor, could not be lawfully arrested under such warrant by an officer who did not have the warrant in his possession at the time. Mellor, J., said: "Whenever a warrant has been issued to arrest a person charged with an offense in respect of which he can not be apprehended without a warrant, the police officer must have the warrant in his possession at the time when he executes it; if he has not, the arrest will be illegal." See also Reg. *v.* Chapman, 12 Cox, C. C. 4;

Hale *v.* Roche, 8 T. R. 187. Upon principle and authority, we think the arrest and detention of Shaw must be held to have been unlawful. This being true, Adams. can not be lawfully punished for having liberated Shaw from such detention.

4. Nor was the case for the State aided by the evidence of the subsequent return of the officer with the warrant. It does not appear that upon such return he saw Shaw or that Shaw was present. at all. When he first had Shaw in custody the detention was unlawful, because the officer did not have possession of the warrant under which he was acting. When subsequently he secured the warrant, there was no custody at all. Thus at no time was there any lawful custody. Besides, we regard the return of the officer with the warrant as a second and distinct effort to make the arrest. Adams had already liberated Shaw from the officer's custody, and the rescue, whatever its nature, was complete. When the officer returned with the warrant and Adams refused to allow him to execute it, the offense was not that of rescue, but was, if anything, that of obstructing legal process.

For the reasons given above, we hold that the verdict can not stand, and reverse the judgment of the trial judge refusing a new trial. I myself am of opinion that the bond given by Shaw, though irregular, was enforceable, and that he could not be again lawfully arrested under the same warrant; but, in view of the ruling just made, we deem it unnecessary to pass upon the other questions made and argued by counsel.

*Judgment reversed. All the Justices concur.*