*Frank S. Loftin,* contra.

## POLK v. THOMASON.

In order for a parol agreement, made in the presence of a witness, to be such that part performance thereof will bring it within the provisions of the act of December 17, 1901 (Acts 1901, p. 63), as amended by the act of August 7, 1903 (Acts 1903, p. 91), it must, in the presence of a witness, create between the parties thereto one of the relations mentioned in the act.

Submitted February 8,—Decided April 16, 1908.

Action for penalty. Before Judge Lewis. Jasper superior court. March 25, 1907.

G. W. Polk sued D. C. Thomason to recover the statutory penalty prescribed by the act of December 17, 1901 (Acts 1901, p. 63), for wrongfully employing one alleged to be the cropper of the

plaintiff.   The petition alleged:   "That one Lucius Freeman en-
tered into a verbal contract with petitioner in the fall of 1905, to
work as a cropper and cultivate a one-horse farm for petitioner,
on the halves, in the year 1906; that said contract was made in the
presence of one witness."   At the time the contract was made,
Freeman, "who had cropped with petitioner in 1905, owed a large
supply account at the store of Robinson, Kelly & Co.," for which
petitioner was security, and also owed the petitioner $7 for sup-
plies.   It was mutually agreed, that if Freeman should desire to
work elsewhere in 1906, "he would settle up said supply account
and notify petitioner before Christmas, 1905, in order that [he]
might have time to get some one else to cultivate said one-horse
crop, and that in the event said Freeman did not settle up and
notify petitioner before Christmas, 1905," Freeman "was to culti-
vate as a cropper for petitioner the same lands he had worked in
1905."   Freeman failed to settle his supply accounts and to notify
petitioner before Christmas, 1905, "and his said contract with pe-
titioner became absolute."   In "part performance of said contract
[Freeman] continued to occupy and use petitioner's house and
premises   .   .   till January 9, 1906."   Defendant, without first
obtaining the written consent of petitioner, removed Freeman from
petitioner's premises to those of defendant, and gave him employ-
ment for the year 1906.   By an amendment to the petition it was
alleged:   The contract between petitioner and Freeman "was a
conditional verbal contract," and it was mutually agreed. that if
"Freeman should desire to work elsewhere than with petitioner in
1906, he would settle up his account at the store of Robinson, Kelly
& Co.," and pay the amount due the petitioner, and notify petitioner
before Christmas, 1905, of his intention to remove from petitioner's
premises and vacate said premises by January [December?] 31,
1905, "and that if he did not pay up the aforesaid accounts and
notify petitioner as aforesaid, then he was to continue to occupy
the same house of petitioner, and to cultivate the same lands, as
cropper for petitioner, that he occupied and cultivated in 1905."
He did not pay the indebtedness or notify petitioner of his desire
to leave the premises; and in part performance of his contract he
continued to occupy petitioner's house and premises until January
9, 1906, when he was wrongfully, and without petitioner's consent,
removed from said premises by the defendant.

Defendant demurred, generally and specially, to the petition. The demurrer was sustained and the petition dismissed, and the plaintiff excepted.

*A. Y. Clement,* for plaintiff.   *A. S. Thurman,* for defendant.

FISH, C. J.   (After stating the facts.)

The statute involved in this case is exceedingly drastic.   In its amended form, the first section of the act provides, that "when the relation of employer and employee, or of landlord and tenant of agricultural lands, or of landowner and cropper, has been created by written contract, or by parol contract partly performed, made in the presence of one or more witnesses, it shall be unlawful for any person during the life of said contract, made and entered into in the manner above described, to employ, or rent lands to, or furnish lands to be cropped by said employee, or to disturb in any way said relation, without first obtaining the written consent of said employer, landlord or landowner, as the case may be." The second section provides that "any person violating the provisions of the foregoing section shall, at the option of the party alleged to have been injured, be prosecuted for a misdemeanor, and upon conviction punished as provided in section 1039 of the Penal Code, or he shall be liable in damages to said alleged injured party, as follows:   (1) In case of employer and employee, the damages shall not be less than double the amount of wages or salary for the entire period of said contract.   (2) In case of landlord and tenant, or of landowner and cropper, the damages shall not be less than double the annul rental value of the lands rented or cropped, said value to be fixed at 1,000 pounds of lint cotton to the plough." Acts 1901, p. 63; Acts 1903, p. 91.   It will be seen, from these provisions, that the act is not only in derogation of the common law, but is essentially a penal statute.   It creates a new offense and provides for its punishment, but leaves it optional with the party injured to prosecute the violator of the statute for a misdemeanor, or to sue him for damages, and, in the event the injured party adopts the latter course, arbitrarily fixes the amount of damages to be recovered, regardless of the amount of damages actually sustained.   So that whether the criminal prosecution or the civil action for damages is pursued, the result, in the event of a conviction in the one or a recovery in the other, is the infliction of a penalty upon the defendant.   That the purpose of the act was, in

cither event, to inflict a penalty is also clearly indicated in its title, by the words "to provide certain penalties." The statute is therefore to be strictly construed, and not to be extended beyond the clear import of its terms. It was doubtless in view of its stringent provisions that the legislature, when passing the original act, made it applicable only to cases in which "the relation of employer and employee," etc., "has been created by written contract duly executed before an officer authorized to administer oaths." Acts 1901, p. 63. While the amendatory act of 1903 (Acts 1903, p. 91) made the provisions of the statute applicable to written contracts, whether made in the presence of an officer or not, and to parol contracts partly performed, made in the presence of one or more witnesses, it still evidently adhered to the manifest legislative purpose, that, in a prosecution or a suit brought under the provisions of the statute, proof of the existence of the contract relation in question should not depend alone upon the testimony of an alleged party thereto. Hence the presence of one or more witnesses at the making of a parol agreement was required, in order to bring it within the provisions of the statute. Now, suppose the present case should come to trial upon the merits, and the witness who was present when the parol agreement was made should be placed upon the stand, for the purpose of proving that a parol agreement was entered into between the plaintiff and Freeman which created the relation of landowner and cropper between them, would his testimony be sufficient for this purpose? Clearly not. All that he could testify would be, that in his presence these persons agreed that if certain things did not happen before Christmas, 1905, such relation should exist between them during the year 1906; but whether these things had or had not occurred before Christmas, 1905, he could not testify. So that, in order for the plaintiff to establish the contract relation alleged in the petition, recourse would have to be had to other testimony, necessarily including that of one of the parties to the alleged agreement; and the existence of such contract relation might depend absolutely upon the testimony of the plaintiff, which, it seems evident, was the very thing the statute intended to guard against when it required the contract to be made in writing or in the presence of one or more witnesses. The statute contemplates that, in a prosecution or a suit brought under its provisions, a complete contract, creat-

ing one of the relations mentioned in the act, shall be shown by a written instrument, or made in the presence of one or more witnesses. In other words, nothing essential to the creation of the relation which the law seeks to protect shall be left to be supplied by the testimony of a party to the agreement. The relation in question must, in the one case, be created by the writing itself, or, in the other, in the presence of one or more witnesses. A contract whereby one of the relations mentioned in the act will be created in the future, upon the happening or non-happening of a given contingency, dependent upon the will of one of the parties, will not meet the requirements of the statute. In the present case the petition expressly alleges that the parol agreement, made in the presence of a witness, was conditional, and that it thereafter "became absolute," because the condition upon which it was to become operative occurred, thus rendering it impossible to prove by this witness that the relation of landowner and cropper between the parties to the agreement was created by what passed between them in his presence. We are clearly of opinion that the petition set forth no cause of action.

*Judgment affirmed. All the Justices concur.*