9399

STATE v. SHAW.

(89 S. E. 322.)

1. ARREST—CRIMINAL ACTIONS—NECESSITY OF WARRANT—ACTUAL POSSION OF OFFICER.—Without a warrant in his actual possession an officer cannot lawfully make an arrest for a misdemeanor not committed in his presence.

2. ARREST — CRIMINAL ACTIONS — ACTUAL POSSESSION OF WARRANT BY OFFICER—PRODUCTION UPON DEMAND.—Where the officer attempting to make an arrest is known, the production of the warrant cannot be required before the arrested person has actually submitted to his authority, though it may be demanded immediately thereafter.

3. ARREST—CRIMINAL ACTIONS—WARRANT—PRESUMPTION THAT DEFENDANT KNEW OFFICIAL CHARACTER OF OFFICER.—Where nothing to the contrary appears, it will be presumed that the official character of the officer making an arrest is known to the defendant.

4. ARREST— CRIMINAL ACTION— NECESSITY OF WARRANT— ACTUAL POSSESSION BY OFFICER.—Where officer with warrant for arrest of accused in his possession drove to the home of accused, and left the warrant in a buggy some 200 yards from the house where the arrest was made, *held*, the officer was in such actual possession of the warrant as to make the resistance of the accused unlawful.

Before SHIPP, J., Kingstree, October, 1915. Reversed.

Joe Shaw was convicted of resisting an officer and of assault and battery. From an order of the Circuit Court setting aside the verdict, the State appeals.

*Mr. Solicitor Stoll,* for appellant, cites: 3 Cyc. 876; 2 R. C. L. 23, and distinguishes 48 S. E. 910.

*Messrs. R. K. Wallace* and *W. C. Davis,* for respondent, cite: 48 S. E. 910.

June 27, 1916.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Defendant was tried for resisting an officer and assault and battery of a high and aggravated nature, on the following facts: A warrant charging him with disposing of property under lien was issued by a magistrate and directed to W. E. Allen, a rural policeman of the county, and delivered to him for execution. Allen took the warrant and drove to defendant's house in a buggy with a Mr. Bradham. He left the warrant in his buggy, 150 or 200 yards from the house, and went into the house and put his hand on defendant's shoulder and told him that he had a warrant for him and to consider himself under arrest. Defendant asked, "What for?". Allen replied, "For disposing of property under lien," and told him that Mr. Bradham had sworn out the warrant. Defendant said, "I am not going," and violently resisted arrest, which was accomplished after a struggle. Allen then sent Bradham to the buggy to get the warrant. Upon these facts the jury found defendant guilty. The Court, on defendant's motion, set aside the verdict, on the ground that at the time of making the arrest the officer had not such possession of the warrant as is required by law.

The question is novel and important. It involves, on one hand, the liberty of the citizen, and, on the other, the majesty of the law and the duty of the citizen to yield prompt obedi-

ence to its authority. While the law is very tender of the liberty of the citizen, nevertheless it considers resistance of judicial process an offense of very high and presumptuous nature, especially the obstruction of arrest on criminal process, for that strikes at the very foundation of government and tends by the strong arm to defeat justice and overthrow peace and order. *State* v. *Bowen,* 17 S. C. 58. Notwithstanding, if the arrest was unlawful, defendant not only had the right to resist it (*State* v. *Wimbush,* 9 S. C. 309.), but it made Allen liable for assault and battery and false arrest; and the consequences would have been even more serious if either had been seriously wounded or killed in the encounter.

The authorities agree that in cases of misdemeanor not committed in his presence, and for which he cannot lawfully arrest without a warrant, the officer should have the warrant in his actual possession at the time of making the arrest. The reason is that, if demanded, he must produce the warrant and read it to the accused, that he may know by what authority and for what cause he is deprived of his liberty. But it is equally well settled that, where the officer is known, the production of the warrant cannot be required before the person to be arrested has actually submitted to his authority, though it may be demanded immediately after the arrest is made. 2 R. C. L., p. 465; 3 Cyc. 876. It is considered that the arrest, the explanation, and the reading of the warrant when demanded are obviously successive steps. They cannot all occur at the same instant of time. And in case of a known officer the accused must first submit to his authority, and then he can demand explanation of the cause of the arrest and the production and perusal of the warrant therefor. 2 Bish. Crim. Proc., secs. 648, 649.

In this case, nothing appearing to the contrary, it must be presumed that defendant knew Allen's official character;

and, notwithstanding he was informed of the cause of his arrest and of the existence of the warrant therefor, he made no demand for its production, either before or after his arrest. In *State* v. *Byrd,* 72 S. C. 104, 51 S. E. 542, the Court said:

"As a general rule, it is the duty of an officer in making an arrest to state his official character and the cause of the arrest, exhibiting his warrant, if he has one; but the failure to take these precautions does not justify homicide or even physical resistance by the party arrested without inquiry on his part as to the authority for his arrest. In *State* v. *Anderson,* 19 S. C. L. (1 Hill) 327, 345, which is generally regarded a case of great authority, a private citizen was killed while attempting to arrest Anderson in this State for a murder committed in Georgia. Judge O'Neall says: 'The qualification to the general rule to which I have alluded is that, where the party making the arrest inform the prisoner of their intention to arrest, or actually make it, and the prisoner makes no demand of the cause, it is not necessary to state it. After Col. Martin informed the prisoner that he and his party were there to arrest him, to avail himself of his want of knowledge of the cause of the intended arrest, he ought to have demanded it. His failure to do so, as well as the facts to which I have already adverted, deprive him of any benefit of this defense.' "

Defendant's resistance was, therefore, unlawful, unless the mere fact that Allen did not have the warrant in his hand or in his pocket at the time will justify him. That would be a narrow and technical view of the law, not based on substantial grounds. Looking at the reason of the law which requires the officer to have actual possession of the warrant, Allen was in such actual possession of it as reasonably to satisfy its every requirement. It was not necessary that he should have had the warrant in his hand or in his pocket at the time of making

the arrest. Actual possession of it does not mean that. The rule is satisfied if the officer has such possession of the warrant that he can produce it with reasonable promptness on demand. Suppose the sheriff had a warrant in his desk or in his safe in his office, and the person therein accused should walk into his office, or if, indeed, the sheriff should meet him on the street in front of his office; surely the law would not require the sheriff to desist from making the arrest until he could get the warrant out of his desk or safe, possibly thereby giving the accused an opportunity to escape.

The Circuit Judge rested his decision upon the case of *Adams* v. *State,* 121 Ga. 163, 48 S. E. 911. But in that case the officer did not have the warrant with him, but had left it at his home, which was said to be some distance (though it is not stated how far) from the scene of the arrest—presumably too far for the officer to have produced it on demand. The same observation applies to all the cases cited in the textbooks (2 R. C. L., p. 465, and 3 Cyc. 876) in support of the rule that the officer must have actual possession of the warrant. In some of them the warrant was at the station house in the possession of the chief of police, while the arrest was made by an inferior officer while out on his beat in another part of the town; in others it was in the possession of another officer in another county or town or in a different part of the same town, and could not, therefore, have been produced on demand, and the accused would have been deprived of his liberty for an unreasonable length of time before the warrant could be produced. In none of them was it so near at hand, as in this case, that it could have been produced with reasonable promptness on demand. This case is differentiated by the facts and circumstances mentioned.

The order of the Circuit Court is reversed, and the case is remanded to that Court for the purpose of having the sentence imposed.