## SHAFER *v.* THE STATE.

750

No. 14025.   APRIL 15, 1942.

754

*William F. Lozier*, for plaintiff in error.

*Ellis G. Arnall, attorney-general, John A. Boykin, solicitor-general, Durwood T. Pye, E. E. Andrews,* and *E. J. Clower, assistant attorney-generals,* contra.

ATKINSON, Presiding Justice. ■ Under the act approved February 3, 1938 (Ga. L. 1937-1938, p. 103, sec. 11 (c) (Code, 1941 Supp. § 58-1056), "the possession of any distilled spirits or alcohol by any person which does not bear the tax stamps provided for herein shall be unlawful, . . and the offender shall be guilty of a misdemeanor." It is lawful, however, under section 23(b) of that act (Code Supp. § 58-1073), "for any person to have and possess for use, and not for sale, in any county of the State, one quart of the liquors and beverages described in this act, which may have been purchased by the person for use and consumption from a lawful and authorized retailer and properly stamped." All presumptions being in favor of innocence, possession of whisky in quantity within the one-quart limit above described by the statute is prima facie presumed to be lawful. The mere smell of whisky will not authorize an inference of illegal possession. *Graham* v.

*State,* 150 *Ga.* 411 (104 S. E. 248). Accordingly mere smell of whisky in a private room of a dwelling, and the presence of empty whisky containers and two glasses, in one of which was a fourth of a teaspoon of corn whisky, is insufficient to show violation of the law by the occupant, so as to authorize his arrest without a warrant for illegal possession of whisky. An arrest of the occupant without a warrant under such circumstances would be illegal. The fact that an empty bottle not bearing a "government stamp," but showing a "State stamp," containing "the fumes" of corn whisky, does not require a different ruling.

■ "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath, or affirmation, particularly describing the place, or places, to be searched, and the persons or things to be seized." Code, § 2-116. "The officer executing a search warrant may break the door of the house or room specified in the warrant. The warrant is his justification. If it was taken without probable cause, the breaking and search is a trespass on the part of the applicant therefor." § 27-301. An officer undertaking to execute a search warrant should have the warrant in his possession or so immediately at hand that it may be exhibited as authority for making the search. His authority is analogous to the authority of the officer involved in *Adams* v. *State,* 121 *Ga.* 163 (3) (48 S. E. 910), where it was held: "Where the circumstances are such that a lawful arrest can not be made except under warrant, the warrant must, at the time of making the arrest, be in the possession of the arresting officer, or of another in the neighborhood with whom he is acting in concert. For the purpose of making an arrest, a warrant is not in the possession of the officer when it is in his house some distance from the scene of the arrest." See *Luffman* v. *State,* 166 *Ga.* 296, 300 (142 S. E. 371); *Giddens* v. *State,* 154 *Ga.* 54 (113 S. E. 386); *Douglass* v. *State,* 152 *Ga.* 379 (110 S. E. 168). If one of several officers having a common design is sent in disguise to a described house intended to be searched, while other officers, one of whom retains the search warrant, are a mile from the place, or so far distant that it can not be exhibited by such officer to the person whose house is to be searched, and in such circumstances he proceeds to search the premises with-

out informing the owner of the existence of the search warrant, he will be a trespasser, and the attempted search will be illegal. It would not alter the case if after intrusion the intruder should declare that he was "an officer" but did not declare that he had a *search warrant,* the fact being that he did not have one that he could exhibit.

■ Under the rulings just announced, it was erroneous for the judge to charge the jury: "Where it is contended that an officer is slain while, in the course of his duties, he is seeking to prevent the commission of a crime or to make an arrest for the commission of a crime, it is a question for the jury to determine, from the evidence and the defendant's statement, whether there was an arrest, or an attempt to do so, whether a crime was being committed or had been committed in the presence of the officer, and whether or not such arrest or attempted arrest, if made or attempted, was legal or illegal, where the officer had no valid and legal warrant. An arrest may be made for a crime by an officer, either under a warrant or without a warrant, if the offense is committed in his presence. An offense is committed in the presence of an officer when either of the senses of the officer, such as seeing, hearing, or smelling, give him knowledge that the offense is being committed. The possession of whisky is a misdemeanor; that is, under certain circumstances and conditions the illegal possession of whisky is a misdemeanor." The charge was not authorized by the evidence, and tended to confuse and mislead the jury to the injury of the defendant, and requires a reversal.

■ It was ruled in *Johnson* v. *State,* 173 *Ga.* 734 (161 S. E. 590): "A request for instruction upon reasonable fears set up by the defendant as a justification for the homicide, which omitted the principle that the killing must not be committed in a spirit of revenge, was inaccurate; and the trial judge did not err in refusing to give such instruction to the jury." Under the foregoing ruling it was not erroneous to charge the jury as follows: "The mere fact of an unlawful arrest, where such is made or attempted, of which the jury would be the judges, would not alone justify the killing of an officer, unless it should appear that during the progress of the transaction the officer should commit, or attempt to commit, or be about to commit a felony upon the person so killing, or unless such officer should so act or make such a show of violence as to be

sufficient to excite the fears of a reasonable man that a felony was about to be committed upon him by the officer, and such person should act under the influence of those fears, and not in a spirit of revenge." *Wall v. State,* 153 *Ga.* 309 (112 S. E. 142); *Pyle v. State,* 187 *Ga.* 156 (4) (200 S. E. 667).

■ In *Golden v. State,* 25 *Ga.* 527 (4), it was held: "One may kill another against whom he entertains malice, and yet not be guilty of murder." It was said in the opinion: "One may harbor the most intense hatred toward another; he may court an opportunity to take his life; may rejoice while he is imbruing his hands in his heart's blood; and yet if, to save his own life, the facts showed that he was fully justified in slaying his adversary, his malice shall not be taken into the account." In the motion for a new trial complaint is made of the charge: "If the motive of one shooting and killing another is solely to prevent an illegal arrest, he would be guilty of manslaughter; but if such a one shoots and kills another at a time when there is no actual or apparent necessity to do so, either to save his own life or prevent a felonious assault from being committed upon him, he would be guilty of murder." The last part of this charge, when considered in connection with the first part, is erroneous. In the circumstances as stated in the charge, the slayer would be guilty of no greater crime than voluntary manslaughter. The instruction complained of is a quotation from the decision in *Howell v. State,* 162 *Ga.* 14 (134 S. E. 59), but that decision overlooked the decision in the older case of *Golden v. State,* supra, and was not concurred in by all the Justices, and consequently it is not binding as a precedent.

■ In *O'Pry v. State,* 142 *Ga.* 600 (83 S. E. 228), it was held: "There being evidence authorizing the jury to find that the defendant had intentionally shot and killed the decedent, the court did not err in charging the jury as follows: 'The law presumes every homicide to be malicious until the contrary appears from circumstances of alleviation, excuse, or justification; and it is incumbent upon the prisoner to make out such circumstances to the satisfaction of the jury, unless they appear from the evidence produced against him.' *Mann v. State,* 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934.)"

(*a*) There can be no murder without malice express or implied. Code, §§ 26-1002, 26-1003, 26-1004. But one may kill an-

other against whom he entertains malice, and yet not be guilty of murder. *Golden* v. *State,* supra.

(*b*) Introduction by the State of the evidence as to the officer's entry in the dining-room and the bath-room tended to account for the presence of the officer and the manner of his intrusion into the private bath-room in which he was slain. That evidence and the declaration of the defendant made to the superior officer immediately after the homicide, to the effect that he did not shoot until after the deceased officer had shot at him, sufficiently showed alleviation that would prevent *presumption of malice* arising from the fact of intentional killing.

The rulings announced in headnotes 7, 8, 9, 10, and 11 do not require elaboration.

*Judgment reversed. All the Justices concur, except Jenkins and Duckworth, JJ., who dissent.*