36696. WILKERSON *v.* THE STATE.

DECIDED MAY 17, 1957.

*Rountree & Rountree, Price, Spivey & Carlton,* for plaintiff in error.

*W. H. Lanier, Solicitor-General, J. W. Claxton,* contra.

TOWNSEND, J. ■ Special grounds 1 and 3 of the motion for new trial contend that the issue of voluntary manslaughter is not in the case. In this connection Code § 26-1007 provides as follows: "In all cases of voluntary manslaughter, there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied. Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder. The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible; for if there should have been an interval between the assault or provocation given and the homicide, of which the jury in all cases shall be the judges, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge, and be punished as murder."

In *Mack* v. *State,* 63 *Ga.* 693, 696 it is held: "There can be voluntary manslaughter where there is no assault upon the person killing, and no attempt to commit a serious personal injury upon him; for the Code expressly recognizes that there may be 'other equivalent circumstances to justify the excitement of passion and exclude all idea of deliberation or malice, either express or implied.' . . . What circumstances will present this equivalence, and justify the excitement of passion, and exclude all idea of deliberation or malice, the law does not undertake to say; it furnishes a standard, and leaves the jury in each case to make the comparison, and determine whether the special facts of the case before them come up to that standard or not." In *Richardson* v. *State,* 189 *Ga.* 448 (1) (5 S. E. 2d 891) it is held: "The 'other equivalent circumstances' within the meaning of the Code, must be such as would produce on the part of the slayer the same state of mind as would an assault, or an attempt to commit a serious personal injury. In other words, they must be such as would as much exclude all idea of deliberation or malice and justify the excitement

of passion, as would an assault or an attempt to commit a serious personal injury. Whether or not proved circumstances fall within this standard is generally a question for determination by the jury." In *Campbell* v. *State*, 204 *Ga.* 399 (49 S. E. 2d 867), where the defendant broke into the home where his estranged wife was staying with her parents, using an axe, and pursued his wife down the street, killing her with a blow from this weapon, it was held that the part of his statement to the effect that he did not intend to harm his wife but entered the house because he thought there was another man there necessitated a charge on voluntary manslaughter, because the jury might have found that the defendant's belief that another man was with his wife amounted to the "equivalent circumstances" giving rise to irresistible passion, and that "if, from the evidence and the defendant's statement there was *anything deducible* which would *tend* to show that the defendant was guilty of voluntary manslaughter, or which would be sufficient to raise a doubt as to whether the homicide was murder or voluntary manslaughter, the jury should have been instructed. on the law of voluntary manslaughter." P. 406. The same result is reached in *Mize* v. *State*, 135 *Ga.* 291 (69 S. E. 173), where the defendant with a gun went searching for one he believed to have debauched his daughter and, on gaining an admission from him that he had been with the girl on a certain night, shot and killed him. See also *Land* v. *State*, 11 *Ga. App.* 761 (4) (76 S. E. 78), where it was held that the sight and demeanor of one whom the defendant saw for the first time after knowledge that his wife was the man's mistress might present such "equivalent circumstances," and also cases cited in *Richardson* v. *State*, and *Campbell* v. *State*, supra.

The evidence is undisputed that the defendant went to the home of the victim to get or at least to see her children. It authorizes the deduction that she was expecting trouble. She had been there two days previously and had been denied this right. She had her father and grandfather with her. There was a shotgun in the automobile. Its presence in the car authorizes the deduction either that a forcible entry into the house was anticipated or that its use might be necessary in self-defense. From this evidence the jury was also authorized to find that the victim did not draw his pistol before he was shot, and that in his conversation

with her father, which was heard by the defendant, he had refused to allow the defendant to see her children. The jury was authorized to find this refusal under these circumstances amounted to "other equivalent circumstances" to justify the excitement of passion and to exclude all idea of deliberation and malice either express or implied. While the evidence of the State would have authorized a verdict of guilty of murder, and while the evidence and statement of the defendant would have authorized a verdict of justifiable homicide, under the evidence as a whole the jury was authorized to believe part of the testimony of witnesses as to which the evidence was in conflict, and that part of the defendant's statement which they chose to believe, and based thereon, return the verdict of guilty of voluntary manslaughter.

■ Error is assigned in special ground 2 because the court failed to charge on request as follows: "Where parents are separated, the mother and the father have equal rights to the custody and possession of the children. If you find that the child of Evelyn Wilkerson was at the home of Charlie Shealy on the day that Charlie Shealy was shot, Evelyn Wilkerson was entirely within her legal right to go to the home of Charlie Shealy to see her child. I charge you further that party or parties other than the separated parents have no right to keep the child of the separated parents from the custody of the parent. If you should find from the evidence that the defendant and her husband were separated, and that third parties undertook to deny the defendant, the mother, from access to her own child, such interference would not be lawful or justifiable."

Abstractly, the law embodied in this request to charge is correct. Applied to the facts of this case, it might be misleading for the reason that the grandparents of the children, in keeping the mother from seeing them, were under all the testimony acting as agents for their son and stood in his place, and were not acting as third parties who, without regard to the rights of a parent or parents, took the children into their sole custody. Equally, however, it is true that where the defendant's husband and his parents, in the absence of any immediate need or legal authorization took the child to the grandparent's home, the mother, having at least an equal right of custody, had a right to follow her children

to that home in order to see and be with them, and her presence at the house was not unlawful, while the refusal to deny her access may have been. It would have been proper for the court to so charge. And, as against a verdict of murder, the question of the lawfulness or unlawfulness of the deceased's acts might have a bearing on the provocation offered to the defendant and so reduce the offense. See *Todd* v. *State,* 75 *Ga. App.* 711, 715 (44 S. E. 2d 275) and citations. However, the mere fact that the decedent is pursuing an illegal course of action does not constitute justification for homicide. *Perry* v. *State,* 102 *Ga.* 365 (10) (30 S. E. 903); *Shafer* v. *State,* 193 *Ga.* 748, 756 (4) (20 S. E. 2d 34). Accordingly, the failure to give the subject matter of the requests in charge, even had they been perfect in form, was not such error as to require reversal, the verdict being for manslaughter, which would have been authorized even had the charge been given, and since the request embraced no defense to homicide.

The trial court did not err in denying the motion for new trial.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*