## 50780. DEFREEZE v. THE STATE.

STOLZ, Judge.

In this appeal from the judgment of conviction of three counts of violations of the Georgia Controlled Substances Act, the sole issue, apparently of first impression in this state, is whether the search was illegal, hence the evidence seized pursuant thereto subject to the defendant's motion to suppress, because the police officer making the search exhibited to the defendant merely a photocopy of the valid, existing search warrant, which original warrant was in the officer's desk drawer some 10 miles away.

Code Ann. § 27-305 (Ga. L. 1966, pp. 567, 569) provides that "[t]he warrant shall be issued in *duplicate*" (emphasis supplied), and Code Ann. § 27-306 (Ga. L. 1966, pp. 567, 569) provides that "[i]f the warrant is executed the *duplicate copy* shall be left with any person from whom any instruments, articles or things are seized, . . ." (Emphasis supplied.)

The Code does not further define the meaning of "duplicate" in the context quoted above. This presents no

particular problem, as the word is one of common usage and can be given its ordinary meaning. Code § 102-102 (1). The obvious purpose of the statutes is to give the persons affected by the warrant the basis for notice of its issuance. The original can be duplicated in any number of ways. What is essential is that the duplication be the alter ego of the original — that there be a sameness, an indivisibility in the content of the original and the duplicate. Thus the photocopy, when utilized by executing, serving, and returning it as provided in Code Ann. §§ 27-305,-306, supra, becomes a "duplicate copy" within the purview of § 27-306, and is not analogous to secondary evidence, which is admissible in evidence only upon a showing of the inaccessibility of the primary evidence. Code § 38-212.

The cases of *Adams v. State,* 121 Ga. 163 (3) (48 SE 910) and *Shafer v. State,* 193 Ga. 748 (20 SE2d 34), cited by the appellant, are not authority to the contrary. In those cases the police officer had in his possession neither the original nor any sort of copy of the warrant (an *arrest* warrant in *Adams;* a *search* warrant in *Shafer*) whereas it is required that "[i]f the warrant is executed the duplicate copy shall be left with any person from whom any instruments, articles or things are seized . . ." Code Ann. § 27-306, supra.

In Lyons v. State, 503 SW2d 254 (Texas, 1973), the Court of Criminal Appeals of Texas approved the use of Xerox copies of the search warrant and the affidavit, signed by the magistrate. While it might be argued that the magistrate's signature on the already prepared photocopy might be a higher or more valid form of duplicate copy in that it constitutes his approval of the photocopy as an authentic copy, nevertheless, inasmuch as the photocopy is an actual photograph of the document signed by the magistrate, we hold that it is entitled to an equal status of validity, constituting the "duplicate copy" required by the statute.

Accordingly, the trial judge did not err in overruling the motion to suppress and entering the judgment on the verdict.

*Judgment affirmed. Bell, C. J., Deen, P. J., Quillian, Clark, Webb and Marshall, JJ., concur. Pannell, P. J., and Evans, J., dissent.*

ARGUED JUNE 30, 1975 — DECIDED SEPTEMBER 5, 1975 — REHEARING DENIED OCTOBER 3, 1975 — 

*Byrd, Groover & Buford, Denmark Groover, Jr., Alfred D. Fears,* for appellant.

*Edward E. McGarity, District Attorney, Kenneth Waldrep, Assistant District Attorney,* for appellee.

EVANS, Judge, dissenting.

The majority opinion holds that *a copy of a search warrant* was all that was needed by the officer in order to search defendant's residence. This is as contradictory of the Constitution and the laws as can possibly be!

The officer obtained a search warrant but went back to his office, *had a copy made,* placed the original in his desk, and proceeded to the residence ten miles away, with no search warrant and yet made the illegal search. There is no authority whatever for making a search with *a copy of a search warrant!*

The majority opinion cites a Texas case, which is not binding upon this court (see *Etowah Heading Co. v. Anderson,* 73 Ga. App. 814 (38 SE2d 71); *Martin v. Henson,* 95 Ga. App. 715, 733 (99 SE2d 251); *Hooper v. Almand,* 196 Ga. 52, 67 (25 SE2d 778)), and proceeds full steam ahead with the excuse that this is apparently a case "of first impression in this state." *But it is not a case of first impression.* The search was not legal under authority of a plethora of Georgia cases which will be herein cited.

Under the authority of *Adams v. State,* 121 Ga. 163 (3) (48 SE 910) and at page 165, and *Shafer v. State,* 193 Ga. 748 (2) (20 SE2d 34), a search warrant *is required to be in the possession of the officer or so immediately at hand that it may be exhibited as authority for making the search when executed.* A copy is not a warrant! Code Ann. § 27-305 provides for the warrant to be issued in duplicate and a copy shall be left with any person from whom articles are seized. Code Ann. § 27-306. The obvious purpose is to give the persons affected by the warrant notice for the basis of its issuance.

The constitutional authority and the only purpose for the issuance of a search warrant is to protect the right of

the people in their homes against illegal search. Constitution of the United States, Fourth Amendment (Code Ann. § 1-804); Constitution of Georgia (Code Ann. § 2-116); Code Ch. 27-3, as amended. Thus, there is no right to search without a warrant.

Our criminal statutes must be and are always strictly construed in favor of the citizen and against the state. *Riley v. Garrett,* 219 Ga. 345 (1) (133 SE2d 367), and cases cited at page 347; also *Pacolet Mfg. Co. v. Weiss,* 185 Ga. 287, 295 (194 SE 568); *Polk v. Thomason,* 130 Ga. 542, 544 (61 SE 123).

When the barons wrested from King John the Magna Carta at Runnymede in 1215, the Bill of Rights contained the provision for protection against illegal searches. This is so important that it is brought forth in the Bill of Rights of the Constitution of the United States (see Code Ann. § 1-804) and in the Constitution of Georgia (see Code Ann. § 2-116). It is not a light or frivolous trifle to violate this basic fundamental in our law.

Our courts have held that a warrant is not in the possession of the officer whereby he is authorized to make an arrest, if the warrant is in his house some distance from the scene of the arrest. See *Adams v. State,* 121 Ga. 163 (3), supra. Fortunately, we have not yet degenerated to a police state where the police officers may break and enter at will. The police are required to obtain a warrant as their justification before so doing. Without the warrant they have nothing! See *Luffman v. State,* 166 Ga. 296, 300 (143 SE 371); *Giddens v. State,* 154 Ga. 54 (113 SE 386); *Douglas v. State,* 152 Ga. 379 (110 SE 168).

The above principle of law has been enumerated at least two times in cases of fairly recent origin in this court. See *Croker v. State,* 114 Ga. App. 492, 494 (1) (151 SE2d 846), and *Hall v. State,* 113 Ga. App. 587 (149 SE2d 175), although these cases turned on other points.

I therefore, respectfully, but most emphatically, vote to reverse the learned trial judge. He should have granted the motion to suppress and should not have allowed the "slip-shod" practice of permitting the officer to make this illegal search without a search warrant in his possession. In such cases, the police are mere trespassers.

We will not end this dissent without commenting on

Judge Deen's case of *Croker v. State,* 114 Ga. App. 492, 494 (1), supra, citing *Shafer v. State,* 193 Ga. 748, supra, and *Adams v. State,* 121 Ga. 163 (3), supra. But that case serves to support the dissent, rather than the majority opinion. There it was held that the officer should have had the warrant "in his physical possession or so near at hand that it can be exhibited on demand." Here the warrant was at least ten miles away! Further, in the *Croker* case, it was known that a *felony warrant* had been issued and that the offender *would escape* if time were taken to procure physical possession of the search warrant. No such distinguishing features exist in the *DeFreeze* case which we now have under consideration, and same should be reversed.

I am authorized to state that Presiding Judge Pannell joins in this dissent.