## O'SHIELDS *v.* THE STATE.

No other verdict than one finding the defendant guilty of voluntary manslaughter or of murder could properly have been found, under the evidence and the prisoner's statement; and the jury having rendered a verdict for the lesser offense, the judgment of the lower court will not be reversed, even if there were some inaccuracies in the charge.

Argued April 16,—Decided May 14, 1906.

Conviction of manslaughter. Before Judge Kimsey. Hall superior court. February 14, 1906.

*W. B. Sloan* and *Howard Thompson,* for plaintiff in error.

*W. A. Charters, solicitor-general,* contra.

BECK, J. The defendant in this case was indicted for murder. The person alleged to have been slain was his wife. The homicide was not denied. The defense set up by the accused was that he shot at his wife's paramour, one Emmett, with whom he had a short time before, at a spot very near his dwelling, found her in the act of adultery, and that while shooting at Emmett he inflicted the mortal wound upon his wife. The jury returned a verdict finding the defendant guilty of voluntary manslaughter. He made a mo-

tion for a new trial, which was overruled; whereupon he excepted and brought the case here for review.

According to the defendant's own statement made at the trial, after having found his wife and her alleged paramour in the commission of the criminal act, he walked off and called a witness to the scene; then going to a neighbor's house, he returned and went upon his own front porch, where he saw his wife and Emmett coming "through the kitchen, like, through the near way into the large room." He entered and immediately began firing upon Emmett, one of the shots taking effect in the body of his wife, with fatal results. The motion for new trial contained several grounds, but the one most strongly insisted upon by counsel for the defendant is the following: "The judge erred in charging the jury as follows, to wit: 'If the act of adultery is over, no jury has the right to say that it would be justifiable homicide. If the act of adultery is over, and the defendant kills his wife or her paramour, it is voluntary manslaughter, and no jury has the right to say that he is justifiable.'" It is alleged that "this portion of the charge was error: 1st. Because it precludes the jury from saying that the slayer might be justifiable even though he caught his wife under circumstances indicating that the act was just over, and acting promptly. 2d. Because it was taking from the jury the right to say that the defendant was justifiable in slaying the seducer of his wife, or her paramour, after the act of adultery is over, though he acted promptly in that outburst of passion supposed to be irresistible, when he found the great wrong that had been done him. 3d. Because said portion of the charge directed the jury, under the facts in the case, to find the defendant guilty of voluntary manslaughter, and said direction was injurious to defendant. 4th. Because the charge took the facts as testified to in this case and told the jury that if the evidence as shown in this case was true, the defendant would be guilty of voluntary manslaughter; and that said charge took from the jury their prerogative of applying the law to the facts, and deprived the defendant of the right of trial by jury as contemplated by the constitution of the State and the United States." It appears from the whole charge, which is set out in the record, by taking the court's instructions immediately preceding the passage here criticised, that the charge upon the point under consideration was as follows: "The court is not here to say that, but

the jury, under the law, are authorized, whenever a killing occurs in order to prevent adultery, prevent the crime from being committed, the jury may say that this is an instance standing upon the same footing of reason and justice as the other instance of justifiable homicide. But if the act of adultery is over, no jury has the right to say that it would be justifiable homicide. If the act of adultery is over and the husband kills his wife or her paramour, it is voluntary manslaughter, and the jury has no right to say that it is justifiable homicide." The charge-complained of was not error for any of the reasons assigned in the various criticisms made upon it. Considered in connection with other portions of the charge, it correctly stated the law as announced in numerous decisions of this court where similar issues were under consideration. And this excerpt from the charge selected by the plaintiff in error, standing alone, contains no element of error as against the defendant. The proposition, "If the act of adultery is over, and the husband kills his wife or her paramour, it is voluntary manslaughter, and no jury has the right to say that it is justifiable homicide," states the law even more favorably to the defendant than several of our decisions would permit; because, where the act of adultery is over, the question is not whether the homicide is justifiable, but whether it is murder or voluntary manslaughter, and the correct solution would depend upon whether a sufficient interval had elapsed between the provocation given and the killing for the voice of reason and humanity to be heard. If such a space had passed, the homicide should be attributed to deliberate revenge and held to be murder. We do not, however, mean to say that in this case there had been a sufficient interval of time between the provocation given and the killing for the surging passion of the husband to have been allayed, and for the voice of reason and humanity to have prevailed; but considering that it had not, still, if the act of adultery was over—if it had been completed, and the participants had left the immediate place of their crime, the homicide was committed for an act that was definitely in the past upon no other provocation than a completed wrong, and under no decision of this court that we recall or can find could it be adjudged justifiable. In the case of *Mays* v. *State*, 88 *Ga.* 399, the Justice delivering the opinion said: "This court has never held that the husband would be justifiable in killing after the adultery has been committed. On the

contrary it was ruled in *Hill's* case [64 *Ga.* 453] that this could not be one of the 'other instances which stand upon the same footing of reason and justice as those enumerated' in the code, because the enumerated cases all contain the element of defense or prevention." And in the same decision the following is taken as the true principle of law in such cases: " 'In order to reduce the crime from murder to manslaughter, it is necessary it should be shown that the prisoner found the deceased in the very act of adultery with his wife. I do not mean to say that the prisoner must stand by and witness the actual copulative conjunction between the guilty parties. If the prisoner saw the deceased in bed with the wife, or saw him leaving the bed of the wife, or if he found them together in such a position as to indicate with reasonable certainty to a rational mind that they had just then committed the adulterous act, . . it will be sufficient to satisfy the requirements of the law in this regard, and if, under such circumstances he then and there struck the mortal blow, his offense would amount to manslaughter only;' " the only qualification added by this court being that the jury may acquit of all crime if they find that the killing was done, and was necessary at the time, either to prevent the commission or completion of the adulterous act. See the case of *Gossett* v. *State,* 123 *Ga.* 431. In the case of *Baker* v. *State,* 111 *Ga.* 142, the principle enunciated is, that, "in order to reduce such a homicide to manslaughter, it must appear that the accused found his wife in the very act of adultery, or under such circumstances as to indicate that she had just committed the adulterous act." From these decisions it is evident that when the court charged that if the act was over, the killing was voluntary manslaughter, he was laying down a rule that was as favorable to the defendant as the plain law would permit; and if that amounted to a direction of a verdict against the defendant, it was simply because of the patent and admitted facts of the case, and not by reason of any erroneous instructions. Nor was this charge objectionable for any of the other reasons contained in the motion. But counsel for plaintiff in error contend that the true rule is, that "where a husband comes upon his wife and her paramour in the act of adultery, or under circumstances that indicate that the act is just over or about to take place, he may kill the adulterer, and it is for the jury to say, under all the circumstances surrounding the case, what the killing is, whether

murder, manslaughter, or justifiable homicide." And they rely upon the cases of *Drysdale* v. *State,* 83 *Ga.* 744, and *Wilkerson* v. *State,* 91 *Ga.* 734, to support this contention. Neither of those cases, however, will be found to uphold them in the position taken. While some of the language used in each case might be susceptible of the construction sought to be placed upon it, it will be found that the ruling contended for is not supported by the decision upon the issues involved. In both of those cases alleged paramours were upon trial, and in each there was evidence tending to show that the criminal act between the paramour and wife was either in actual progress, or the circumstances left it doubtful as to whether it was about to begin or had just been completed, and the expression, *"just* over or about to begin," as used by the writers of the decisions in those cases, had reference to the situation as portrayed by each record. In *Wilkerson's* case Justice Lumpkin uses this language: "Taking the entire charge of the court, in connection with the refusals to charge, it will appear that the trial judge was of the opinion that if Stephens came suddenly upon his wife and Wilkerson, and found them in the act of adultery, or under circumstances indicating that the adulterous act was just over or about to begin, he would be perfectly justifiable in killing Wilkerson on the spot." And it is in discussing such a situation that he uses the language relied upon by counsel. In *Drysdale's* case (quoting from the opinion) "there was no evidence save that of the prosecutor which tended to show that the defendant and the prosecutor's wife were caught under circumstances calculated to induce the belief that they had just been in the act of cohabitation or were about to cohabit." It is therefore manifest that it was in a discussion of facts radically and totally different from those disclosed in the present record that the Justice, in each of those cases (Justice Lumpkin in *Wilkerson's* and Chief Justice Bleckley in *Drysdale's*) used the language employed by counsel, in stating the principle of law upon which they rely for a reversal of the court below. The expression, "just over or about to begin," was there used with reference to a state of facts and circumstances which left doubtful in the mind of the husband the stage of the proceedings which his arrival interrupted. But in the case at bar the husband on trial, according to his own statement, knew that the act of intimacy between his wife and her paramour

was completely finished and passed, and that the guilty pair had left the scene of their offense against him.

Up to this point we have discussed the charge in the light of the defendant's statement alone, but justice to the trial judge would require that it should be considered also with reference to the sworn testimony in the case. And thus viewing it, it is still more plainly manifest that the defendant has no right to complain. But basing what we say upon the uncontroverted evidence alone, and without going into a great mass of evidence which conflicts with the statement of the accused, we find that the defendant, after having discovered his wife in the very act of adultery, deliberately brought an acquaintance, who was standing near, to witness the outrage against him, and without attempting then to punish the guilty, or to prevent the completion of the wrong, he went to the house of a neighbor, borrowed a pistol upon some pretext, returned to his home, and, meeting there his wife and her lover, fired shot after shot at the latter as he faced him and as he fled. Under these facts it is needless to argue, or cite authority to show, that the court did not err in charging the jury a principle of law applicable to the rights of a husband upon coming face to face with the seducer of his wife after the act is over, and that it was not required to give them instructions in reference to what a husband may rightfully and within the law do when he comes upon his wife in company with a man under such circumstances as will justify him in concluding that an act of adultery is "just over or about to begin."

If there were any inaccuracies in the charge with reference to a higher grade of homicide than manslaughter, or in the court's illustrations as to what constitutes legal malice, the error was not of such a nature as to require a reversal in this case; as, under the evidence and the prisoner's statement, the jury could not properly have rendered any other verdict than one finding the defendant guilty, either of voluntary manslaughter or of a higher offense. See *Johnson* v. *State*, 14 *Ga.* 55(11), 65.

<em>Judgment affirmed. All the Justices concur.</em>