## PATTERSON v. THE STATE.

1. The excerpt from the court's charge as contained in the first division of the opinion was not open to any of the criticisms made upon it.
2. When considered in connection with its context, the excerpt from the charge contained in the second division of the opinion is not erroneous.
3. An omission to give in charge Penal Code section 985, concerning the relative value of positive and negative testimony, in the absence of a timely written request, is not sufficient ground for a new trial.
4. On the trial of one for murder, where it becomes material to explain the presence of the deceased at the scene of the homicide—whether he was there on an innocent or an unlawful mission, testimony of an officer that he had a warrant for the defendant, and had requested the deceased on the morning of the homicide to watch the place where the homicide occurred, and to telephone the officer if he discovered the defendant's presence, is relevant.
5. The evidence warranted the verdict.

MARCH 19, 1910.

Indictment for murder. Before Judge Littlejohn. Sumter superior court. December 23, 1909.

*C. R. Winchester,* for plaintiff in error.

*John C. Hart, attorney-general,* and *J. R. Williams, solicitor-general,* contra.

EVANS, P. J. The defendant, Henry Patterson, was convicted of the murder of W. F. McRee, and sentenced to be hanged. On the trial evidence was submitted in behalf of the State, tending to show that the homicide occurred near the house of the defendant's wife (who was living separate and apart from her husband at the time) at about eleven o'clock at night. During the day the sheriff of the county, who had a warrant for the defendant, requested the deceased to watch the premises of the defendant's wife, in order to ascertain if the defendant was lurking around. Two pistol shots were heard, as if they were fired near the house of the defendant's wife, and shortly thereafter some neighbors, who were attracted to the scene by the pistol shots, found the body of the deceased lying about 91 feet distant from the house. When his body was thus discovered it was found that a bullet had passed through his neck, cutting the internal jugular vein, and the ground where the body was lying showed marks of profuse bleeding from the wound. The deceased was attired in his usual dress; his hat was lying within a few feet of the body. The defendant contended, that, as he approached the house of his wife that night, he saw a man enter the house, and

shortly heard him importune his daughter to submit to his lust, and that upon her refusal he made a similar request of the defendant's wife; that from the conversation and noise in the house he was led to believe that the person therein was about to have sexual intercourse with his wife or daughter, and that he placed his arm through the window into the house and fired in order to prevent the impending sexual act. There was no trace of blood in the house, nor between the house and the place where the body of the deceased was found. There were some other circumstances tending to connect the defendant with the homicide and show that the deceased was killed at the place where his body was found.

1. In the motion for new trial the defendant complained of the following charge: "The law does not justify the killing after the adultery or sexual intercourse with the wife or daughter has been completed. A man may, in good faith, defend his wife's or his daughter's virtue on the same principle of reason and justice that he might defend his own person and be justifiable in doing so, but the law will not justify him in deliberately killing a man for a past or an accomplished act of sexual intercourse, either with his wife or his daughter. The killing after such an act has been completed is not one of the instances which stand upon the same footing of reason and justice as those enumerated in the Penal Code of this State." The error alleged is, that the charge was inapplicable; that it was misleading and confusing, and impressed the jury with the idea that if the deceased had just completed the act of adultery with the defendant's wife, and the defendant discovered it immediately while the deceased was in the presence of his wife and killed him, the homicide would not be justifiable. In this excerpt from the charge the court was presenting to the jury the law applicable to the theory advanced by the defendant that the deceased had just committed, or was about to commit, adultery with the defendant's wife. There was evidence which authorized an inference that the shooting could not have occurred in the house, as claimed by the defendant. The court was submitting to the jury the appropriate law, based upon the hypothesis that the deceased had engaged in the act of sexual intercourse in the house, but that he was fired upon after leaving the house. The charge was applicable to a theory made by the record, and not open to the criticisms made upon it.

2. The court charged: "In order to reduce a homicide from murder to manslaughter, where it is claimed that the killing or homicide was committed for the purpose of preventing an act of adultery with the wife, or adultery and fornication, or sexual intercourse, with the daughter, a killing by the husband or father, if that defense is set up, in order to reduce the homicide from murder to manslaughter under those circumstances, it is not necessary to show that the husband or father found the deceased in the act of adultery with his wife, or committing sexual intercourse with his daughter; but if he should find them together in such position or under such circumstances as to indicate to a reasonable certainty to a rational mind that such an act had just been committed, or was about to be committed, and, under a sudden heat of passion aroused by such circumstances, the husband or father slays the deceased, or slew the deceased, he could be found guilty of no higher offense than that of voluntary manslaughter." This charge is said to be error, because, if the defendant found his wife and the deceased together under such circumstances as to indicate with reasonable certainty that the sexual act with his wife or daughter had just been committed, or was about to be committed, and the defendant under such circumstances slew the deceased, he would be justified. It has been held that the killing of one who is in the act of adultery with the slayer's wife is within Penal Code section 75, which declares that "all other instances which stand upon the same footing of reason and justice as those enumerated shall be justifiable homicide." *Richardson* v. *State,* 70 *Ga.* 825. In other parts of the charge the court clearly presented this feature of the law of justifiable homicide to the jury, with an instruction that if it appeared that the killing was necessary, or apparently so to a reasonable person, to prevent sexual intercourse with the wife or daughter, the jury would be authorized to find the homicide justifiable and acquit the defendant. The excerpt which is criticised was taken from that part of the court's instruction drawing the distinction between murder and voluntary manslaughter. While it is true that the jury may acquit the slayer of all crime if they find the killing was necessary, or apparently so, either to prevent the commission of the sexual act or the completion of it, yet, if the circumstances were not such as to impress a rational mind that it was necessary to take human life to prevent the sexual intercourse,

and if the jury should find that the slayer killed the deceased under a violent and sudden impulse of passion, engendered by the circumstances, the homicide would be manslaughter. *Mays* v. *State,* 88 *Ga.* 399 (14 S. E. 560). The court was endeavoring to impress upon the jury the idea that if the killing occurred under the circumstances described, the defendant would not be guilty of murder; that he could be found guilty of no higher offense than that of voluntary manslaughter. The place where this excerpt is found in the charge is disconnected with the instruction defining under what circumstances the defendant would be justifiable in taking the life of the seducer of his wife or daughter. On this subject the charge was full and accurate, and no complaint is made on that score. When considered in its context, we do not think the criticism upon the charge is meritorious.

3. Complaint is made of an omission to charge Penal Code section 985, concerning the relative value of positive and negative testimony. In every case it is the duty of the judge, with or without request, to give to the jury an appropriate instruction as to the law on each substantive point or issue involved in the case, but a judge is not obliged to charge, in the absence of a timely written request, as to any collateral matter. Hence a failure to charge the law with respect to the impeachment of witnesses will not, in the absence of a request, be ground for a new trial. *Robison* v. *State,* 114 *Ga.* 445 (39 S. E. 862). We hardly think the code section was applicable to any phase of the testimony; but even if it were, the omission of the judge to give the section in charge, in the absence of a timely written request, is not sufficient ground for a new trial.

4. The court allowed the deputy sheriff, over objection, to testify that on the day of the homicide he informed the deceased that he had a warrant for the defendant; that he suspected that the defendant could be found on the plantation where his wife lived; and requested the deceased to look around the place, and, if he discovered the defendant's presence there, to telephone him of the fact. The objection to this testimony was that it was irrelevant and illegal. This testimony was admissible to explain the presence of the deceased at the place where his body was found, and to illustrate the issue that he was not there for the purpose of having sexual intercourse with any member of the defendant's family, but for the

purpose of assisting an officer, who had a warrant against the defendant, in compassing his arrest.

5.  The evidence is sufficient to sustain the verdict, and no error is made to appear.

*Judgment affirmed.  All the Justices concur, except Fish, C. J., absent.*