.19070. WHITFIELD *v.* THE STATE.

DECIDED OCTOBER 2, 1928.

*H. G. Rawls,* for plaintiff in error.

*B. T. Castellow, solicitor-general, Bond Almand,* contra.

LUKE, J. Amie Whitfield was indicted for murder and convicted of voluntary manslaughter. The motion for a new trial was based upon the usual general grounds, the contention being that, while the accused might have been acquitted or convicted of the charge made, there was nothing in the case to sustain a conviction of manslaughter.

The evidence may be briefly summarized as follows: Bessie Walker was seen running from an outhouse, where she said she had been to relieve herself, with Amie Whitfield in hot pursuit. It was night and dark. Just before Bessie ran up to a witness and asked him not to let Amie cut her any more, the witness heard Amie say, "I have caught you," and heard Bessie say, "Amie, don't cut me, please." When Amie came up, she had a pocket-knife, and was threatening to kill Bessie. Another witness took the knife from Amie. Amie told Bessie that she had caught her with her (Amie's) husband. Bessie said she was in the outhouse relieving herself when Amie ran up and cut her. No weapon was found on Bessie. She was severely cut and bloody, and died as a result of the knife wounds inflicted by Amie. The full statement of the defendant follows: "Well, I cut this woman, and I cut her because I caught my husband on her. I had suspicioned them for six or seven weeks, and Will Scott came to me and told me that this woman was going to meet my husband at this house that night, and I went to the house.and waited for a while. And I struck a match and held it in the window, and my husband was on top of her, and

I grabbed at him as he run out, and I cut her because I couldn't help it, I was so mad."

In *Daniels* v. *State,* 162 *Ga.* 366 (133 S. E. 866), where it was inferable from the evidence that immediately after hearing her husband make an engagement to meet his mistress at night for the purpose of having illicit intercourse with her, the defendant followed the pair, and, in a violent and sudden heat of passion, slew the other woman, the court held that it was for the jury to say whether the homicide should be reduced from murder to voluntary manslaughter. In this decision the law controlling such cases was laid down in the following language: "While the jury may acquit the slayer of all crime, and should do so if they find that the killing was necessary, or apparently so, either to prevent the commission of a sexual act or the completion of it, yet, if the circumstances were not such as to impress a rational mind that it was necessary to take human life to prevent the sexual intercourse, and if the jury should find that the slayer killed the deceased under a violent and sudden impulse of passion, engendered by the circumstances, the homicide would be manslaughter. *Mays* v. *State,* 88 *Ga.* 399 (14 S. E. 560) ; *Patterson* v. *State,* 134 *Ga.* 264 (67 S. E. 816). Under the homely maxim that what is sauce for the goose is sauce for the gander, the above principles are applicable in a proper case where the wife is the slayer."

It is clear to our minds that the jury had the right to conclude in the instant case that it was not necessary for the defendant to slay the deceased either to prevent the commission of a sexual act or the completion of it, and that the killing was done in a sudden and violent impulse of passion engendered by the circumstances. The verdict was warranted by the evidence and the defendant's statement, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*