## 29540.   JAMES *v.* THE STATE.

DECIDED APRIL 25, 1942.

*H. A. Allen, Gertrude Harris,* for plaintiff in error.

*John A. Boykin, solicitor-general, Durwood T. Pye, Daniel Duke,* contra.

GARDNER, J. The defendant was tried for murder and convicted of voluntary manslaughter. He filed a motion for new trial on the general grounds and thereafter added two special grounds. The motion was overruled and he excepted, contending that the verdict was unauthorized for reasons stated in the general grounds as well as in the special grounds. We will first deal with the special grounds, in their reverse order, and will mention the evidence generally as it applies to each division of the contentions of the defendant.

■ The defendant introduced a number of witnesses as to his general good character, as well as his good character for peaceableness. He made no request to charge the law applicable to such evidence. However, the court did charge the law fully with reference to the effect of evidence as to general good character, but did not specifically charge as to the good character of the defendant for peace or for violence. In the absence of a written request the court did not err in failing to charge on this evidence. *O'Bryant* v. *State,* 37 *Ga. App.* 827 (142 S. E. 306). We think the effect of the court's charge included the good character as to peaceableness. There is no merit in this contention.

■ The other special ground complains that the court erred in charging the law of voluntary manslaughter. The evidence showed that the deceased and the defendant lived in houses located close to each other, having only a few feet distance between them; that about nine o'clock in the morning the deceased went from the back entrance of his house into the space between the two houses, toward the front; that the defendant raised the shade of his own window and fired from the window with a shotgun, inflicting 105 pellet wounds on the person of the deceased. The deceased immediately fell to the ground. The wife of the deceased went to him, being attracted by the gunshot and the outcries of the deceased. The defendant came from his own house with a shotgun, pointed the gun at the deceased, and stated that he had a great mind to kill him. Shortly thereafter the deceased was taken to the hospital, from which place he was removed the next day dead. The deceased, before he died, upon being questioned as to why the defendant shot him, stated that he did not know; that he had no

words with the defendant and did not see him. The defendant introduced a number of witnesses who testified to the effect that the deceased had for some time carried on illicit relations with the wife of the defendant. There was also evidence to the effect that on the night immediately before the homicide the wife of the defendant was not at home.

The defendant made the following statement: "I was told of it and I asked my wife about it, and she said yes, he had been going with her but she told him to stay away, and he would not; and I told him to stay away twice and he continued to come back. Well, a couple of weeks after then he came down there and called her, they told me, and shot out there in my yard five times. The night before the killing was did, he came back down there about one o'clock, and he pulled at the screen, and I went to the window to see who it was, and he ran away back to his house. Next morning when I got up he came back down there again, knocked at the window and called my wife, said he had something for her; and I went to the window first and went and got my gun and came back and pulled the shade up, and he had his hands on the window, and he stepped back two or three steps and I did shoot him, and he backed up two or three more steps and started back to his back porch, and I went out around there where he was at. He said, 'Please, don't shoot me no more, I will never bother you no more, I will never give you no more trouble.' His wife came from down the street and came down there where he was at, and I went on in the house and put up the gun then and left."

The defendant contends that under this special ground the record of the evidence does not involve the question of the principle of voluntary manslaughter in a heat of passion; that the defendant was either justified, under the evidence and the defendant's statement, or was guilty of murder. He cites, in support of this contention, *Stevens* v. *State,* 137 *Ga.* 520 (73 S. E. 737, 38 L. R. A. (N. S.) 99) ; *Cyrus* v. *State,* 102 *Ga.* 616 (29 S. E. 917) ; *Kelly* v. *State,* 145 *Ga.* 210, 212 (88 S. E. 822) ; *Tolbirt* v. *State,* 119 *Ga.* 970 (47 S. E. 544) ; *Smith* v. *State,* 106 *Ga.* 673 (32 S. E. 851, 71 Am. St. R. 286). We do not think these cases bear out the contentions of the defendant under the facts of this case. Under the record of this case the contention is controlled adversely to the defendant under the principle of law announced in *Gossett* v. *State,*

123 *Ga.* 431 (51 S. E. 394); *O'Shields* v. *State,* 125 *Ga.* 310 (54 S. E. 120); *Patterson* v. *State,* 134 *Ga.* 264 (67 S. E. 816); *Daniels* v. *State,* 162 *Ga.* 368 (4-a) (133 S. E. 866); *Goodson* v. *State,* 162 *Ga.* 178 (6) (132 S. E. 899); *May* v. *State,* 24 *Ga. App.* 379, 382 (100 S. E. 797). Under the principles announced in these cases and cases cited therein, the court, under the facts of this case, correctly submitted the question of voluntary manslaughter to the jury. We find no merit in this ground.

■ The defendant contends that he should have a reversal on the general grounds, for the reason that the evidence for the State failed to show that the gunshot wounds produced the death of the deceased. This argument is based largely on the ground that the physician who attended the deceased at the hospital did not testify expertly that the gunshot wounds caused the death. There is no intimation throughout the record that the death of the deceased was caused otherwise than from the wounds admittedly inflicted by the defendant. The embalmer testified: "I found wounds on the left side of his body, left lower abdomen, and the left forearm about here [indicating]. Shotgun pellets created the wounds in there. In my estimation, it was a full load—a full charge of a shotgun. I don't know how many shot. I could tell that the shots had torn into the vital parts of his body. They had gone into the abdomen, puncturing the intestines. I did not probe the wounds, but I could tell through my operations, by the fluid seeping out through those wounds, that it did puncture the intestines. The pellets had gone into his body from a side angle. It hit the arm first. In fact, the arm covered this portion apparently [indicating]. But where the arm wasn't you could see where some of them just glanced by the body and some went in." Dr. Cleve Ward, the doctor at the hospital, testified: "This man was in shock, when I saw him, from blood loss. He had innumerable wounds on the left side of his abdomen and his left arm. There were 105 perforations in his intestines. That was sufficient to cause death."

The jury was authorized to find that the gunshot wounds inflicted by the defendant caused the death of the deceased. There are numerous decisions sustaining this view. We will cite only *Brown* v. *State,* 10 *Ga. App.* 216 (2) (73 S. E. 33): "Where one is charged with a homicide, proof that the homicide as charged was actually committed by him must be clear and unequivocal. Yet

this fact can be proved by circumstances, and by inferences reasonably deducible from the facts in evidence, as well as by direct testimony. In this case the evidence was clear that the accused struck the decedent a blow with a deadly weapon, and the jury were authorized, although there was no expert testimony and death did not result until several days thereafter, to find that the homicide was caused by the blow inflicted by the accused with the deadly instrument."

We have examined the record in this case most carefully, in view of the character of the case, and the earnestness with which it was presented by counsel for the defendant. The charge was full and clear, and properly instructed the jury as to all issues involved under the record.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*