31677.   TODD *v.* THE STATE.

DECIDED SEPTEMBER 25, 1947.

*T. Ross Sharpe, R. N. Odom,* for plaintiff in error.
*W. H. Lanier, Solicitor-General,* contra.

GARDNER, J. ■ As to the general grounds, and special grounds 2, 6, 7, and 9, all go to the general effect that the evidence did not authorize the charge of the court on voluntary manslaughter, it being contended by the defendant that the only issue was whether the defendant was guilty of murder or was justified in the killing. With this view we can not agree. Under the evidence as it appears in the record now before us, the court was authorized to submit to the jury the principle of law as applied to voluntary manslaughter under a sudden heat of passion supposed to be irresistible. *Cribb* v. *State,* 71 *Ga. App.* 539 (31 S. E. 2d, 248).

■ Special ground 1 assigns error on the following charge of the court: "The defendant has, in the exercise of his rights, made in your hearing a statement. It is not under oath, not subject to cross-examination, and is entitled to just such weight and credit only as the jury thinks proper to give it. You may believe the statement of the defendant in preference to the sworn testimony in the case." Error is assigned because the court should have charged in connection therewith "if you see fit you may acquit the defendant on the strength of his statement alone." In our

opinion the charge of the court is in substantial compliance with the Code, § 38-415, as regarding a defendant's statement. And the words "you may believe the statement of 'the defendant in preference to the sworn testimony in the case" is tantamount to that which counsel for the defendant argues should have been added. This ground is without merit.

■ Special ground 3 assigns error on the following excerpt from the charge of the court: "Then the jury should look to the question of whether or not, under the evidence and the defendant's statement, the defendant would be guilty of manslaughter. And in determining the question of whether under the facts and circumstances of the case, the defendant is guilty of the offense of voluntary manslaughter, the court intructs you that in order to reduce a homicide from murder to voluntary manslaughter where it is claimed by the husband that the killing or homicide was committed for the purpose of preventing an act of adultery on the part of the deceased, with the wife of the defendant, it is not necessary to show that the husband found the deceased in the act of adultery with the wife, but if he should find them together in such position and under such circumstances as to indicate that such an act had just been committed, or was about to be committed and under a sudden violent impulse of passion aroused by such circumstances the husband slew the deceased, he could be found guilty of no higher offense than voluntary manslaughter." "All the courts, except those having an express statute on this subject, hold that if a man finds another committing adultery with his wife and kills him on the spot, it is manslaughter. We agree to this view, with the qualification that the jury may acquit of all crime if they find that the killing was done and was necessary at the time either to prevent the commission of the adultery or the completion of it." *Mays* v. *State*, 88 *Ga.* 399, 403 (14 S. E. 560). See, in this connection, Code, §§ 26-1011 and 26-1016.

In order to acquit of all crime under the rule above stated, it is necessary that it should be shown that the killing was necessary at the time to prevent the adultery, or that the defendant found the deceased engaged in the criminal transaction of adultery with his wife. This does not mean that the defendant must stand by and witness the actual copulative conjunction between the guilty parties. If the defendant saw the deceased in bed with his wife,

or found them together in such a position as to indicate with reasonable certainty to a rational mind that they had just then engaged in copulative conjunction between them, it would be sufficient to satisfy the requirements of the law in this regard in that this would be sufficient to authorize the husband to conclude that the criminal transaction of committing adultery had begun and had not been entirely completed, and would authorize an acquital. See *Mays* v. *State*, supra.

In this case the jury, under the contentions of the defendant, supported by his statement to the jury, would have been authorized to find that the killing was necessary at the time to prevent the commission of adultery with his wife and could have acquited the defendant of all crime; yet, under one phase of the evidence, the act of adultery had not begun, although it appeared that such act was about to begin, or the deceased was in the act of beginning the criminal transaction, and upon the approach of the husband, the wife left the spot or automobile, and after she had arrived at the porch of her home, some distance away, and had been met there by her mother, the defendant shot and killed the unarmed deceased to prevent his escape while the deceased was scuffling with the defendant in an effort to escape. Thus, the jury would have been authorized to find that the distance between the wife and the deceased at the time of the killing was such that the element of prevention was not present, and this phase of the evidence authorized a finding that no element of defense was present, that the defendant, under a sudden and violent impulse of passion aroused by such circumstances, after the wife had left the automobile and was a safe distance therefrom, slew the deceased, and that the defendant was guilty of voluntary manslaughter.

This phase of the evidence authorized a finding that the deceased was seeking to escape from the husband's vengeance, and that the latter shot to prevent the escape, and that it was not necessary at the time to kill the deceased to prevent the adultery so as to make the homicide capable of standing upon the same footing of reason and justice as the instances of justifiable homicide enumerated in Code, § 26-1011. See § 26-1016. The evidence authorized a finding that the provocation, being intolerably great, was enough to reduce the offense from murder to manslaughter. *Mays* v. *State*, supra; *Jackson* v. *State*, 91 *Ga.* 271 (18 S. E. 298,

44 Am. St. R. 22) ; *Drysdale* v. *State,* 83 *Ga.* 744 (10 S. E. 358, 6 L. R. A. 424, 20 Am. St. R. 340) ; *Wilkerson* v. *State,* 91 *Ga.* 729 (17 S. E. 990, 44 Am. St. R. 63) ; *Baker* v. *State,* 111 *Ga.* 141 (36 S. E. 607) ; *Cloud* v. *State,* 81 *Ga.* 444 (7 S. E. 641) ; *Gossett* v. *State,* 123 *Ga.* 431 (51 S. E. 394) ; *Ellison* v. *State,* 137 *Ga.* 193 (4) (73 S. E. 255).

The judge instructed the jury as follows: "If the jury should entertain a reasonable doubt as to the guilt of the defendant of the offense of murder the jury should acquit so far as the offense of murder is concerned. Then the jury should look to the question of whether or not, under the circumstances the evidence and the defendant's statement, the defendant would be guilty of manslaughter. And in determining the question of whether, under the facts and circumstances of the case, the defendant is guilty of the offense of voluntary manslaughter, the court instructs you that in order to reduce a homicide from murder to voluntary manslaughter, where it is claimed by the husband that the killing or homicide was committed for the purpose of preventing an act of adultery on the part of the deceased with the wife of the defendant, *it is not necessary to show* that the husband found the deceased *in the act of adultery* with his wife, *but if he should find them together in such position and under such circumstances as to indicate* to a reasonable certainty to a rational mind that such an act had just been committed, or was about to be committed [yet, if it was not necessary, or apparently so, to kill to prevent the adultery] and under a sudden violent impulse of passion aroused by such circumstances the husband slew the deceased, he could be found guilty of no higher offense than voluntary manslaughter." (Brackets ours.) Under the evidence in this case, the above quoted charge was not prejudicial to the defendant because such charge was followed immediately by the following explanatory statement or instruction: "*In other words,* gentlemen, if the jury should find that the killing was not necessary, or apparently so, in order to prevent the commission of the sexual act, or completion of it, and that the circumstances were not such as to impress a rational mind that it was apparently necessary to kill the deceased to prevent sexual intercourse on the part of the deceased with the wife of the defendant, but that the defendant killed the deceased under a violent sudden impulse of passion en-

gendered by the circumstances and conditions, then and in such event the jury would be authorized to convict the defendant of the offense of voluntary manslaughter." (Italics ours.)

Where the latter instructions were aimed to be explanatory of the former, the two should be read and considered together, and when it is so done, we think the jury understood that the instructions were meant to read as containing the words in the brackets, and when the charge is considered as a whole, we do not think special ground 3 shows reversible error.

■ Special ground 4 assigns error upon an excerpt from the charge of the court as follows: "If the jury should find that the killing was not necessary, or apparently so, in order to prevent the commission of the sexual act, or completion of it, and that the circumstances were not such as to impress a rational mind that it was apparently necessary to kill the deceased to prevent sexual intercourse on the part of the deceased with the wife of the defendant, but that the defendant killed the deceased under a violent. sudden impulse of passion engendered by the circumstances and conditions, then and in such event the jury would be authorized to convict the defendant for voluntary manslaughter." Under the facts of this case, this charge is applicable and the assignment hereon is not meritorious.

■ In charging the jury as to their verdict if they should find the defendant guilty of voluntary manslaughter, the court, after stating that they should fix a minimum and a maximum sentence somewhere between the minimum of one and the maximum of twenty years, added this: "The legal effect of that would be that the defendant would serve within the confines of the penitentiary up to the minimum time fixed by your verdict, and then by compliance with rules fixed by the prison authorities the defendant would be permitted to serve from the minimum time to the maximum time fixed in your verdict without the confines of the penitentiary." Under the act of 1943 (Ga. L. 1943, p. 185), the law vests the State Board of Pardons and Paroles with somewhat broad discretionary power. Just recently the Supreme Court has rendered a decision to the effect that the said board could parole a convict under their rules which provide that an application or investigation of a convict may be passed upon after the convict has served one-third of his minimum sentence. This was the paramount, if

not the only question before the Supreme Court in that case, which will be found reported in *Matthews* v. *Everett,* 201 *Ga.* 730 (41 S. E. 2d, 148). Undoubtedly under this decision of the Supreme Court the convict would not have to serve the full minimum sentence if the State Board of Pardons and Paroles saw fit to parole him under the rules of the board, as they now exist, after a convict had served one-third of his minimum sentence. So the charge excepted to could not be harmful error to the defendant as applied to the minimum which the jury fixed. However, able counsel for the defendant in this case contends that, while he could find no decision on the question, the act of 1943 creating the said board, puts it within the discretion of the board whether or not they parole a prisoner at the expiration of the minimum sentence. And that if jurors knew that the prisoner may not be released until the expiration of the maximum sentence, then it would undoubtedly influence the jury in the fixing of the maximum sentence. Upon examining the policies and rules of the State Board of Pardons and Paroles, we find the following regarding paroles, in rule 4, as follows: "Paroles. Definition: Parole is the release of an offender from a penal institution, after he has served a portion of his sentence, under the continuing custody and supervision of the State and under conditions that permit his reincarceration in the event of misbehavior. A release on parole is not a right nor is it based on any concept of clemency but on the findings of the Board 'that there is a reasonable probability that, if he is so released, he will live and conduct himself as a respectable and law-abiding person, and that his release will be compatible with his own welfare and the welfare of society.' (Senate Bill No. 5, approved February 5, 1943)."

The instant case is not covered under the term "Paroles" just quoted, but is covered by division 6 of the same rules and regulations under what is termed "Conditional Releases," as follows: "Definition: Conditional release is a form of order selected by the board in releasing felony prisoners who have completed the service of their minimum sentence with good institutional conduct record. This form of release is distinguished from parole in that the conditional release is automatic when the requirements are met, whereas parole is a discretionary act of the board. Those prisoners who are discharged from prison by order of 'conditional

release' remain under the jurisdiction of the Board of Pardons and Paroles, subject to rearrest and other rules governing parole until the maximum sentence date." In explanation of conditional release, the board states in its rules and regulations the following: "Explanation: The Conditional release order was chosen by this Board as a form of release for those prisoners who have completed their minimum sentence with good institutional conduct record, based on the ruling of the Attorney General, which is, in part, as follows: 'It is my opinion that the General Assembly, in making provision that the jury should fix a minimum and maximum term within the term prescribed by law, intended that each and every prisoner abiding by the rules of the State Prison authority should expect to be and would be released upon completion of the minimum term set by the verdict of the jury.' " It is therefore our opinion that the court charged the correct principle of law with reference to a conditional release. If a more elaborate explanation of the operation of the indeterminate sentence was desired, a special request should have been made to the court. We find no error in this assignment.

■ Special ground 8 assigns error because the court did not specifically charge in connection with the offense of voluntary manslaughter that if they entertain a reasonable doubt as to the guilt of the defendant as to voluntary manslaughter that they should acquit him. In our opinion this ground is without merit, for the court did charge that the defendant is presumed by law to be innocent and that the burden was on the State to produce evidence which satisfied the minds of the jury of the guilt of the defendant beyond a reasonable doubt. It is perhaps the better practice where an indictment charging a major offense embraces within it one or more lesser offenses that the court, in passing from one offense to the other, and when charging the jury as to any offense embraced within the indictment, should charge the jury specifically as to each offense that if they should believe him guilty beyond a reasonable doubt they may convict him, and that if they entertain a reasonable doubt as to his guilt of the offense concerning which the trial judge is then instructing them, they should acquit the defendant.

The court did not err in overruling the amended motion for a new trial.

*Judgment affirmed. MacIntyre, P. J., and Townsend, J., concur.*