## 50873. HENDERSON v. THE STATE.

SUBMITTED JULY 1, 1975 — DECIDED OCTOBER 20, 1975 —
REHEARING DENIED NOVEMBER 10, 1975.

*Herndon & Hubble, Robert E. Herndon,* for appellant.

*Fred M. Hasty, District Attorney, Walker P. Johnson, Jr., Assistant District Attorney,* for appellee.

DEEN, Presiding Judge.

1. The defendant offered five requests to charge on the subject of justifiable homicide which were refused by the trial court, including the following: "The jury may acquit of all crime if they find that the killing was necessary at the time either to prevent the commission or completion of the adulterous act . . . the jury may acquit the slayer of all crime, and should do so if they find that the killing was necessary or apparently so, either to prevent the commission of a sexual act or the completion of it. . . If the defendant came upon her husband and another woman in the act of adultery, and being so enraged at seeing the acts of the parties kills her husband or his paramour . . . this killing of the adulterer taken in the act could be justified. . . Our law will sometimes excuse the wife for slaying the seducer of her husband immediately after the guilty act is over if she acts promptly," etc.

The requests were properly refused. The court instructed the jury they should return a not guilty verdict if they found the death to have resulted from accident, which was the justification claimed by the defendant in her testimony. Assuming that the "unwritten law" defense was also relied upon, it was not raised by the evidence. We have found no case in which it has been applied to homicide of the spouse, since the underlying rationale of this defense is that its purpose is to prevent or stop an act directed against the marriage relationship, and of course nothing so thoroughly terminates that relationship as the death of the spouse. It is stated in *Daniels v. State,* 162 Ga. 366, 369 (133 SE 866) as follows: "While the jury may acquit the slayer [of the *paramour*] of all crime, and should do so if they find that the killing was necessary, or apparently so, either to prevent the commission of a sexual act or the completion of it, yet, if the circumstances were not such as to impress a rational mind that it was necessary to take human life to prevent the sexual intercourse, and if the jury should find that the slayer killed the deceased under a violent and sudden impulse of passion, engendered by the circumstances, the homicide would be manslaughter. *Mays v. State,* 88 Ga. 399 (14 SE 560); *Patterson v. State,*

134 Ga. 264 (67 SE 816)." To the same effect see *Hill v. State*, 64 Ga. 453; *O'Shields v. State*, 125 Ga. 310 (54 SE 120); *Richardson v. State*, 70 Ga. 825; *Wilkerson v. State*, 91 Ga. 729 (17 SE 990). The distinction is drawn in *Campbell v. State*, 204 Ga. 399, 403 (49 SE2d 867), "Sometimes there is a tendency to confuse the law of justifiable homicide and the law of voluntary manslaughter. It must be remembered that it is unnecessary, in order to constitute the crime voluntary manslaughter, that the killing should occur at the time of the commission of an adulterous act. A killing to prevent the beginning or the completion of an adulterous act is justifiable homicide under our law. But a killing, which is unnecessary to prevent an adulterous act, but which might have been the result of passion engendered by adulterous conduct, or conduct and circumstances which are sufficient to lead the slayer to the belief that adultery is about to be committed or has been committed, may fall within the classification of 'other equivalent circumstances' [former Code § 26-1007 relating to voluntary manslaughter] and it is generally a question for a jury to determine whether the special facts of a case before them meet the standard set by law. It is for them to say whether the slayer acted from passion or revenge." Thus, justifiable homicide as a complete defense is available only by a spouse against a paramour or assailant surprised in the act, and for the purpose of preventing it. Feelings of rage or passion do not render the killing justifiable but only operate to reduce the penalty. "But the modern law, in the absence of statute, does not recognize adultery or seduction as a complete excuse for homicide, but merely as a matter which goes to the degree of the homicide. According to the modern rule, a man who, moved by the passion naturally engendered in finding his wife in the act of adultery with another, immediately kills her or her paramour, is guilty of manslaughter only. Even though one finds another in the act of adultery with his wife and kills him directly, upon the spot, the killing is not deemed justifiable in law." 40 AmJur2d 415, Homicide, § 123.

The earlier cases above cited were based on former Code § 26-1016 relating to "all other instances which

stand upon the same footing of reason and justice" as those enumerated as justifiable homicide in the chapter. This language has been retained in Code Ann. § 26-901 (f), but is further explained by our present § 26-902 (b) (2) justifying one in the use of force "to the extent that he reasonably believes that such threat or force is necessary to defend himself or a third person against such other's imminent use of unlawful force" and only if he believes "that such force is necessary to prevent death or great bodily injury to himself or a third person, or the commission of a forcible felony." Adultery is a misdemeanor; it has always been recognized that the force used may be justifiable in preventing the commission of a felony when it will not justify the prevention of a mere misdemeanor. Cf. *Bozeman v. State,* 150 Ga. 667 (2) (104 SE 640). This concept is carried into the new Criminal Code also in Code §§ 26-903 (2) and 26-904 (b), where its purpose is to provide justification only for the repulsion of a forcible felony. Adultery, in addition to the fact that it is not a felony, is a consensual and nonviolent crime. It appears unlikely, in view of the trend of modern law and reorganization of our criminal code, that except in extreme circumstances, it can stand as a complete justification for homicide, although always relevant to the degree of the crime.

2.  As to the charge of aggravated assault by defendant against the paramour of her husband, whom she caught in the act of adultery with her husband, according to defendant's sworn testimony, it is contended that the trial judge should have charged the jury that under such circumstances the adulteress would have no right to use a deadly weapon (a knife in this instance) for the purpose of defending herself; nor would she have the right to make a deadly attack upon the innocent spouse of the husband-adulterer in order to defend herself. This was correct law, but the judge did not so charge the jury. This was clearly held to be the law in *Drysdale v. State,* 83 Ga. 744, 746 (10 SE 358); and the only defense open to the guilty adulterer is to escape (run away at full speed if there is any running space open). To the same effect, see *Wilkerson v. State,* 91 Ga. 729, 736—737, supra. The importance of this legal principle, and the importance of

the trial judge's charging the jury accordingly, is readily obvious. If the adulteress had fled, or had not sought to attack Mattie Lou Henderson, or had not sought to defend herself with a deadly weapon, there would have been no occasion for Mattie Lou Henderson to have cut or otherwise assaulted Catherine Thomas. As it was, Catherine Thomas stood her ground and fought Mattie Lou Henderson with a deadly weapon, thus forcing Mattie Lou Henderson to fight back.

As to the charge of aggravated assault, this constituted a principal defense of defendant, supported by sworn testimony, and it is always error not to charge on a principal contention supported by evidence, even in the absence of a request to charge. See *Waters v. State,* 83 Ga. App. 163 (1) (63 SE2d 264); *Spencer v. State,* 215 Ga. 183 (1) (109 SE2d 588); *Witt v. State,* 231 Ga. 4 (200 SE2d 112).

*Judgment reversed. Pannell, P. J., Stolz, Webb and Marshall, JJ., concur. Bell, C. J., concurs in the judgment. Quillian, Evans and Clark, JJ., concur in part and dissent in part.*

EVANS, Judge, concurring in part and dissenting in part.

Mattie Lou Henderson was convicted in Bibb Superior Court of voluntary manslaughter of her husband, and of aggravated assault of his paramour, when she caught them in bed together engaging in illicit sexual relations.

While there was conflicting evidence in the case, as we are here concerned with the failure to give certain instructions to the jury, suffice to say that there was ample evidence, including the sworn testimony of defendant, to show the following:

Mattie Lou Henderson discovered her common law husband of three years, Grady Williams, in bed with Catherine Thomas, clothed only in a work shirt, and lying directly on top of Catherine Thomas, who was clad only in a bra. She heard Catherine "grunting and going on." She entered the bedroom where her husband and Catherine were in bed together and inflicted cuts with a knife on Grady (her husband) from which he died, and she

inflicted cuts on Catherine Thomas of less severity.

Mattie Lou Henderson was tried in Superior Court of Bibb County and convicted of voluntary manslaughter as to her common law husband, Grady Williams, and convicted of aggravated assault as to Catherine Thomas. The jury was unable to agree on sentences, after which the trial judge sentenced Mattie Lou Henderson to 12 years on the voluntary manslaughter conviction and to 5 years on the aggravated assault conviction, both sentences to run concurrently. She filed a motion for new trial which was overruled, and she appeals to this court.

The majority reverses as to the failure of the trial judge to charge that the adulteress would have no right to use a deadly weapon nor make a deadly attack upon the innocent spouse of the husband-adulterer in order to defend herself. This is found in Division 2 of the majority opinion. I concur fully in the judgment of reversal and in this portion of the opinion. When a spouse discovers another woman in bed with her husband, in the act of committing adultery, the adulteress has no right whatever to use a deadly weapon to defend herself against the innocent spouse who has just made this discovery of what is going on; and about the only thing the adulteress can do is to run if she can find running room.

However, I violently dissent from the majority opinion in Division 1. Here the majority says the trial judge *did not err in failing to give in charge to the jury five written requests by defendant.* The substance of these five written requests to charge was to the effect that an innocent spouse may be acquitted if she kills her husband to prevent the commission or completion of the act of adultery; that the jury may acquit the innocent spouse if she kills her husband to prevent the act of adultery, including its commission or completion; that if the innocent spouse finds her husband and another woman engaging in the act of adultery, and is so enraged that she kills her husband, such killing of the husband-adulterer could be justified.

I submit that the trial judge should have given each and every one of these written requests to charge and his failure to do so was reversible error.

Let it be remembered that the common law wife came into the room and found her common law husband, Grady Williams, dressed only in a work shirt, in bed and lying directly on top of Catherine Thomas, who was clad only in a bra. Catherine was "grunting and going on," and there was no question whatever that the act of adultery had commenced and was in progress. What were the rights of the common law wife — to walk away, taking no action whatever to prevent the act of adultery, or its completion? That is directly at variance with the law of Georgia!

1. There is a suggestion, although not strongly emphasized, in the majority opinion to the effect that the new Georgia Criminal Code, effective July 1, 1969, does not afford the same protection to husbands and wives who kill to prevent adultery as did the former laws of Georgia, including the Code of 1933. Let us deal with this question and eliminate it at the outset.

All of the protection that was afforded by all former laws, including the Code of 1933, to husbands and spouses to kill in order to prevent adultery, is carried forward and fully effective in the new Criminal Code. In the Code of 1933, that protection was found in Code § 26-1016 which provided: "All other instances which stand upon the same footing of reason and justice as those enumerated, *shall be justifiable homicide."* (Emphasis supplied.) In the new Criminal Code, § 26-901; it is provided that: "The fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct. The defense of justification can be claimed: . . . (e) When the person's conduct is justified for any other reason under the laws of the State; or (f) In all instances which *stand upon the same footing of reason and justice* as those enumerated in this Chapter." (Emphasis supplied.) It will be noted that the language in the two different codes is almost identical.

2. In *Todd v. State,* 75 Ga. App. 711 (44 SE2d 275), at page 714, it is held: "We agree to this view, with the qualification that the jury may acquit of all crime if they find that the killing was done and was necessary at the time *either to prevent the commission of the adultery or the completion of it. Mays v. State,* 88 Ga. 399, 403."

(Emphasis supplied.) This authority continues at bottom of page 714 and top of page 715: "If the defendant saw the deceased in bed with his wife, or found them together in such a position as to indicate with reasonable certainty to a rational mind that *they had just then engaged in copulative conjunction between them,* it would be sufficient to satisfy the requirements of the law in this regard in that this would be sufficient to authorize the husband to conclude that the criminal transaction of committing adultery had begun and had not been entirely completed, and would authorize an acquittal. See *Mays v. State,* supra." (Emphasis supplied.)

In *Campbell v. State,* 204 Ga. 399 (49 SE2d 867), at p. 403, it is held: "A killing to prevent the beginning or the completion of an adulterous act is justifiable homicide under our law."

In *Scroggs v. State,* 94 Ga. App. 28 (93 SE2d 583), it is held that: "If a wife kills another woman to prevent sexual relations between such other woman and her husband, the killing is justified provided it was because of apparent necessity to prevent the commission of such sexual act."

3. The majority opinion suggests that when defendant came into the bedroom, her husband was asleep. But the testimony of defendant is sufficient to show he was not asleep, especially in connection with the "grunting and going on" that defendant heard from the bedroom just a moment before she entered, and she testified she found her husband dressed only in a work shirt, pants off, and the female had on only a bra, and the deceased was laying on top of the female, which is not considered the orthodox position for sleeping. In considering the written requests to charge, if there was any sworn testimony authorizing them, they should have been given.

4. Of course, it is no longer required that the court charge strictly in the language requested, but the substance of the request must be given in the charge if supported by evidence. See *Long v. State,* 12 Ga. 293, 323; *Carnes v. State,* 115 Ga. App. 387, 393 (6) (154 SE2d 781). Defendant's sworn testimony was sufficient to show that the act of adultery was still in progress when she entered

the bedroom, and irrespective of whether the state's evidence was to the contrary, the trial court was required to charge written requests where supported by sworn testimony. Defendant was sworn as a witness in this case. These requests embodied her principal defense as to the killing, and they were not covered in the court's charge elsewhere. *Waters v. State,* 83 Ga. App. 163 (1) (63 SE2d 264); *Hardy v. State,* 100 Ga. App. 88, 89 (2) (110 SE2d 82). It is the general rule in force in this state that the charge must be adjusted to the evidence. See *Futch v. Jarrard,* 203 Ga. 47, 51 (45 SE2d 420); *Thornton v. Parker,* 208 Ga. 633, 638 (68 SE2d 695); *Brookshire v. J. P. Stevens Co.,* 133 Ga. App. 97, 102 (7) (210 SE2d 46). The court simply failed to instruct the jury on the law as to when and under what circumstances a spouse would be justified in killing her mate to prevent the commission of adultery upon discovery of the outrage that has been done to her. See in this connection, *Wilkerson v. State,* 91 Ga. 729, 734 (17 SE 990); *Richardson v. State,* 70 Ga. 825 (2), 829—830; *O'Shields v. State,* 125 Ga. 310, 312 (54 SE2d 120); *Daniels v. State,* 162 Ga. 366, 369 (4a) (133 SE 866).

5. As to the common law husband feature of the case, the courts have gone much further and have held that the jury may allow to an "affianced" wife this right of protection by her prospective husband. *Futch v. State,* 90 Ga. 472, 473 (6), supra.

Under the above circumstances, I would reverse the trial judge for failing to give the request to charge which would allow the jury to find that one spouse has the right to kill to prevent adultery, the continuation of the act of adultery, or the completion of the act of adultery. These charges were not even given in substance, and though a new trial has been granted, this case should have been reversed also for the failure to include these written requests to charge. The trial judge should be instructed to charge thereon at the new trial.

I am authorized to state that Judge Quillian and Judge Clark join in this dissent.