## 74474. LANEY v. THE STATE.
(361 SE2d 841)

POPE, Judge.

Donna K. Laney brings this appeal from her conviction and sentence of misdemeanor involuntary manslaughter, OCGA § 16-5-3 (b). *Held*:

1. Appellant's first enumeration of error asserts that a rational trier of fact could not have found her guilty beyond a reasonable doubt and that the trial court erred in denying her motion for directed verdict of acquittal. The record evidence showed that at approximately 1:30 a.m. on April 22, 1986 appellant was working alone at a convenience store in Carroll County when two young men en-

tered. The two men went to the beer cooler in the back of the store, picked up two twelve-packs of beer each and started toward the door. As the first young man started out the door, appellant, who had taken a gun from under the counter near where she stood, fired a shot which struck the young man in the head causing his death. The chief medical examiner for the State Crime Lab performed an autopsy on the victim and gave his opinion that "the individual who was firing [was] to the side and back of the [victim] and was firing in an upward direction."

The events leading up to the victim's death showed that the victim and his brother (the other young man who entered the convenience store) were riding with three other young men from Carrollton to Douglasville. It was suggested that the group steal some beer, although one of the group was old enough to purchase it and had the money to do so, because they assumed beer sales ceased at midnight. The victim and his brother decided to enter the store and take the beer, and they were then let out on a dirt road a short distance from the store. After they had entered the store and removed the beer from the cooler, the victim and his brother headed directly for the door without looking at or speaking to appellant. While at the cooler, the victim said to his brother in a soft voice, "[L]et's get something for our thirst." The victim opened the cooler door and said, "I'll get this and you get that." The cooler was more than 34 feet from the counter where appellant stood, and a GBI agent estimated that the young men never got closer than ten feet from the counter. When the remainder of the group returned to the store a few minutes later to pick up the victim and his brother, they discovered the victim's body blocking open the door of the store. The victim's brother had exited the store and was in hysterics. Appellant then came out of the store with the gun and warned them not to allow the victim's brother to flee the scene.

Appellant testified that she recognized the victim's brother as one of two young men who had a few days earlier entered another convenience store where she worked and had grabbed some beer and run out of the store without paying. A fellow employee had pursued them out the door and shot over their heads. She testified that on the day in question the young men entered the store but did not look at her; they went straight to the beer cooler. She stated: "I knew they were going to come in there and steal beer because they were . . . walking up and they were breathing real hard when they walked into the store. And I knew what was going to happen but I didn't know what to do and then when I overheard them talking then that's when I picked up the gun. . . . I heard one say she's by herself, let's go ahead and rob her. . . . I didn't know if they had any weapons because I didn't hear or see no weapons. . . . I picked the gun up and I

thought maybe if they seen the gun it would scare them and they'd just go out. . . . [W]hen they started towards . . . the door, they didn't make no effort to stop at the counter or to pay. . . . [W]hen [the victim] got to the door I said don't do it. And he seen me with a gun. He glanced over . . . at me and he went ahead to push the door open and when he pushed the door, I had the gun in my hand and then I was trying to shoot out the door and thought maybe it would scare him and they would just go on. But instead, it hit him. . . ." Appellant then dialed 911 and reported the shooting.

The thrust of appellant's motion for directed verdict was her assertion that the homicide was justified in order to protect the property in her charge. OCGA § 16-3-24 provides: "(a) A person is justified in threatening or using force against another when and to the extent that he reasonably believes that such threat or force is necessary to prevent or terminate such other's trespass on or other tortious or criminal interference with . . . personal property: . . . (3) [b]elonging to a person whose property he has a legal duty to protect. (b) The use of force which is intended or likely to cause death or great bodily harm to prevent trespass on or other tortious or criminal interference with . . . personal property is not justified unless the person using such force reasonably believes that it is necessary *to prevent the commission of a forcible felony*." (Emphasis supplied.) See also OCGA § 16-3-21 (a). " 'Forcible felony' means any felony which involves the use or threat of physical force or violence against any person." OCGA § 16-1-3 (6). Appellant urges that she had a right, as a matter of law, under the facts in this case to use deadly force because the victim and his brother were committing a robbery upon her at the time of the shooting. We are unable to agree that the facts demand such a finding.

Clearly, a robbery may be resisted by armed force resulting in the killing of the perpetrator provided the circumstances were sufficient to excite the fears of a reasonable man that such an offense was about to be committed. E.g., *Daniel v. State*, 187 Ga. 411 (2) (1 SE2d 6) (1939), overruled on other grounds, *McMichael v. State*, 252 Ga. 305, 309 n. 7 (313 SE2d 693) (1984). See generally *Brown v. State*, 139 Ga. App. 466 (3) (228 SE2d 602) (1976). However, a directed verdict of acquittal is appropriate only where the evidence *demands* a verdict of not guilty. OCGA § 17-9-1 (a). The evidence of record showed that although appellant purportedly heard the victim and his brother discuss robbing her, the victim's brother testified that the word "robbery" was never mentioned. The actions of the victim and his brother in the store could fairly be construed as indicating that they were going to do nothing more than take the beer from the cooler and walk out of the store without paying for it, i.e., theft by shoplifting (a misdemeanor or, at worst, a non-forcible felony), see OCGA § 16-8-14 (a),

as opposed to robbery (a forcible felony), see OCGA § 16-8-40 (a). See also *Hicks v. State*, 232 Ga. 393, 403 (207 SE2d 30) (1974), holding that "force used in an attempt to escape with property taken by larceny does not transform the crime into robbery." See generally *Luke v. State*, 171 Ga. App. 201 (1) (318 SE2d 833) (1984); *Wallace v. State*, 159 Ga. App. 793 (3) (285 SE2d 194) (1981). Appellant herself testified that she knew that these young men intended to steal beer when they first entered the store. Furthermore, based on her earlier experience at the other convenience store, she had reason to know what was going to happen.

It has always been recognized that the force used may be justified in preventing the commission of a felony when it will not justify the prevention of a mere misdemeanor. *Henderson v. State*, 136 Ga. App. 490, 493 (221 SE2d 633) (1975); *Norrell v. State*, 116 Ga. App. 479, 485 (157 SE2d 784) (1967). See also *Johnson v. Jackson*, 140 Ga. App. 252, 256 (230 SE2d 756) (1976), holding that it is unlawful to use deadly force to arrest, or to prevent the escape of, one who has committed a misdemeanor even though no other means are available. In a case such as the one at bar the motive of the slayer is for determination by the jury, and if it is claimed the homicide was committed under the fears of a reasonable man, it is for the jury to decide whether or not the circumstances were sufficient to justify the existence of such fears. *Fudge v. State*, 190 Ga. 340 (4) (9 SE2d 259) (1940); *Sawyer v. State*, 161 Ga. App. 479 (1) (288 SE2d 108) (1982), and cits.; *Johnson v. Jackson*, 140 Ga. App. at 257, supra. Likewise, the question of whether appellant used excessive force under the circumstances in this case was properly a matter within the province of the jury. See *Hodge v. State*, 153 Ga. App. 553 (265 SE2d 878) (1980). The weight and credibility of the evidence was for the jury, and it is apparent that the jury resolved the foregoing issues against appellant. We find that any rational trier of fact could have found appellant guilty as charged beyond a reasonable doubt. See *Brown v. State*, 150 Ga. App. 831 (1) (258 SE2d 641) (1979); *Wood v. State*, 146 Ga. App. 141 (245 SE2d 490) (1978); see also *Mullins v. State*, 157 Ga. App. 204 (1) (276 SE2d 877) (1981).

2. Appellant's remaining enumeration assigns error to the trial court's failure "to define the offense of robbery for the jury." To paraphrase the holding in *Wiseman v. State*, 249 Ga. 559 (5) (292 SE2d 670) (1982), appellant in the case at bar relied on a defense of justifiable homicide. She contended that she was acting in self-defense or in the alternative that she was using the force necessary to prevent a forcible felony. These are justifications for homicide. See Division 1, supra. In order to intelligently consider the defense of justification, the jury must be informed as to what constitutes the forcible felony relied upon. "Therefore, when the prevention of a forcible felony is

charged as justification *and the defendant requests a charge on the specific forcible felony of which there is evidence,* it is error to fail to charge the elements of such a felony as it relates to justification." (Emphasis supplied.) Id. at 561. See *Teal v. State,* 122 Ga. App. 532 (2) (177 SE2d 840) (1970). The record here contains no request to charge the offense of robbery. Moreover, the record also discloses that appellant responded in the negative to the trial court's inquiry as to any exceptions to the charge. We thus have two procedural hurdles in reaching the merits of this issue.

First, "though present law exempts the defendant in a criminal case from the strict requirements imposed on litigants in civil cases to preserve an issue on the giving or the failure to give instructions to the jury ([OCGA § 5-5-24]) this does not relieve him from the necessity of requesting instructions except in those circumstances where the omission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence. [Cits.]" *Hardin v. State,* 141 Ga. App. 115, 116-117 (232 SE2d 631) (1977); see OCGA § 5-5-24 (c). We find the error alleged to be substantial and harmful as a matter of law. See *Wiseman,* supra. See generally *Central of Ga. R. Co. v. Luther,* 128 Ga. App. 178 (1) (196 SE2d 149) (1973).

As to the second hurdle, a negative response to the trial court's inquiry as to any exceptions to the charge generally results in a procedural default and a waiver of the right to challenge any portion of the trial court's charge on appeal. E.g., *Zant v. Akins,* 250 Ga. 5 (2) (295 SE2d 313) (1982); *Rann v. State,* 183 Ga. App. 234 (3) (358 SE2d 644) (1987). However, we find the error here so "blatantly apparent" and "highly prejudicial" as to deprive appellant of her right to a fair trial and thus require reversal of her conviction and a new trial. See *Barnett v. State,* 178 Ga. App. 685 (1) (344 SE2d 665) (1986); cf. *Maynard v. State,* 171 Ga. App. 605 (2) (320 SE2d 806) (1984). But see *Irvin v. Oliver,* 223 Ga. 193 (2) (154 SE2d 217) (1967) (OCGA § 5-5-24 (c) refers only to the failure to make objection to the charge and not to those instances where the giving of an instruction, or the failure to give an instruction, is specifically acquiesced in by counsel); *Mahomet v. State,* 151 Ga. App. 462 (1) (260 SE2d 363) (1979), cert. den., 445 U. S. 943 (1980) (where counsel introduces evidence on a theory of defense and thereafter asks for no charge on a valid defense and responds to the trial court that he has no exceptions to the charge, an error in the charge is self-induced and will not be a ground for a new trial).

*Judgment reversed. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED SEPTEMBER 22, 1987 —
REHEARING DENIED OCTOBER 6, 1987 —

*Gerald P. Word*, for appellant.
*Arthur E. Mallory III, District Attorney, William G. Hamrick, Jr., Assistant District Attorney*, for appellee.