**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 21, 2014**

# In the Court of Appeals of Georgia

A14A1302. JOHNSON v. THE STATE.

BOGGS, Judge.

A jury convicted Gregory Bernard Johnson of misdemeanor obstruction of an officer, and he appeals. Johnson argues that the evidence was not sufficient to sustain the conviction, and that the trial court erred in denying several of his requests to charge the jury. For the reasons that follow, we affirm.

Evidentiary challenges in the appeal of criminal convictions are viewed in the light most favorable to the verdict. *Chambers v. State*, 252 Ga. App. 190, 190 (1) (556 SE2d 444) (2001). On appeal the defendant no longer enjoys the presumption of innocence, and the appellate court determines not the credibility of the witnesses or the weight of the evidence, but rather its sufficiency; that is, it determines whether

any rational trier of fact could find the evidence sufficient to establish the defendant's guilt beyond a reasonable doubt. Id.

So viewed, the record shows that police officers were on their way to execute a search warrant at the house of the mother of Johnson's son, where officers thought the son lived. The officers saw the son driving nearby and he agreed to accompany them to his mother's house, but he did not have his house key. The officers forced the door open and began their search. The son was in the back seat of a patrol car during the search.

The son's mother came home shortly after the police began searching, accompanied by the son's cousin, and the mother asked the officers for their search warrant. They told her she could see it when they were done and then ignored her request for them to leave if they did not have a search warrant. The cousin testified that she was protesting loudly on the front porch about the officers' breaking down the door and conducting a warrantless search. At some point, the officers asked the mother to close the front door because the cousin was protesting so loudly but otherwise ignored the two women and continued their search. The cousin testified that when she said loudly that she was about to call the chief of police about the

officers breaking into the house without a warrant, an officer left the scene about an hour into the search and returned with a copy of a search warrant.

Meanwhile, defendant Johnson came into the front yard. The cousin told Johnson that the officers only obtained a warrant after they had broken down the door and searched the premises for an hour, and Johnson responded, "[I]f that's the case, then you have your witnesse[s] together when you come [to] court, [and] the judge will dismiss it because . . . it was wrong." One of the officers had just photographed the back of the house and another picture of the front when Johnson began yelling, "This s--t's not going to fly." The officer told him to calm down, be quiet, and let him finish documenting the scene, after which he would let Johnson talk to his son.

The officer testified that he explained to Johnson that because he did not live there, he did not have a right to be present and therefore needed to step over to another property, but Johnson refused to leave. According to the officer, Johnson's continued "hollering and cussing . . . got everybody else yelling and screaming" a couple of houses down. He testified that he was concerned for his and other officer's safety and could not simply ignore Johnson, because "when I'm trying to take pictures and someone standing behind me hollering and cussing I don't know what they're fixing - - and I've got a gun on my side, I've got to deal with him. I can't take

3

a chance of them grabbing my gun and I don't know what they're going to do in that state of mind." The officer testified that he asked Johnson "a minimum of three times" to calm down and let him do his job before arresting him for obstruction. Finally, the officer stated that Johnson's conduct prevented him from continuing to photograph the scene and going inside to collect evidence; it also caused another officer to stop his activities inside the house and come outside to assist.

Johnson was charged by accusation with the misdemeanor offense of obstruction of an officer,

> for that [he] . . . did knowingly and willfully obstruct and hinder . . . a law enforcement officer with the Polk County Police Department in the lawful discharge of his official duties, by screaming, cursing, and hindering said officer from performing his search and gathering evidence while [executing] a search warrant, in violation of OCGA § 16-10-24 (a).

OCGA § 16-10-24 (a) provides in pertinent part: "[A] person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor."

1. Johnson contends that the evidence was insufficient to support his conviction because the State failed to prove that his "speech rose to the level of obstruction as defined by law." The evidence established that he never physically

4

obstructed the officer, and therefore, he argues, the issue is whether his words themselves could reasonably be considered obstruction. We disagree.

(a) Citing *Woodward v. Gray*, 241 Ga. App. 847, 849 (a) (527 SE2d 595) (2000), and *Ballew v. State*, 245 Ga. App. 842, 843 (1) (538 SE2d 902) (2000), Johnson asserts that speech alone cannot constitute obstruction unless its content could reasonably be interpreted to constitute a threat of violence to the officer, because "a mere verbal exchange with an officer" unaccompanied by threats of violence is not obstruction.

But *Ballew, Woodward*, and numerous other cases holding that the State must present evidence of a threat of violence to sustain a conviction for obstruction of an officer relied on definitions of obstruction that arose out of "an older version of OCGA § 16-10-24, under which force or violence was considered an essential element of the misdemeanor offense of obstruction. [Cits.]" *Stryker v. State*, 297 Ga. App. 493, 494 (677 SE2d 680) (2009). The statute was revised in 1986 to define and separate felony obstruction, which requires threats of violence or forcible resistance, from misdemeanor obstruction, which does not. Under the current version of OCGA § 16-10-24 (a), a person commits the offense of misdemeanor obstruction when he "knowingly and willfully obstructs or hinders any law enforcement officer in the

5

lawful discharge of his official duties." This court explicitly disapproved of both *Woodward* and *Ballew* to the extent that they implied that misdemeanor obstruction requires proof of "forcible resistance" or "threat of violence." *Stryker*, 297 Ga. App at 495, n.1. See also *Duke v. State*, 205 Ga. App. 689, 689-690 (423 SE2d 427) (1992); *Arsenault v. State*, 257 Ga. App. 456, 457 (1) (a) (571 SE2d 456) (2002); *Wilcox v. State*, 300 Ga. App. 35, 37-38 (2) (684 SE2d 108) (2009). [1]

Speech alone can constitute obstruction. For example, we have affirmed obstruction convictions when the defendant (1) advised a companion to remove a car from the scene of an arrest after the arresting officer told him not to, *Stryker*, supra, 297 Ga. App. at 495;

> (2) remonstrated so loudly that she interfered with an officer's interview of individuals who had reported a crime, despite the officer's instruction that she leave the scene, *Carter v. State*, 222 Ga. App. 397, 397-398 (1) (474 SE2d 228) (1996); (3) deliberately misled the officer about his identity, *Wilson v. State*, 261 Ga. App. 576, 578 (2) (583 SE2d 243) (2003); [and] *Herren v. State*, 201 Ga. App. 509, 510 (1) (411 SE2d 552) (1991); (4) wilfully lied about the whereabouts of the subject of a

---

[1]To the extent that *Whaley v. State*, 175 Ga. App. 493, 494 (333 SE2d 691) (1985); *Dumas v. State*, 159 Ga. App. 517, 518-519 (284 SE2d 33) (1981); and *Wells v. State*, 154 Ga. App. 246, 247-248 (268 SE2d 74) (1980), hold that speech must contain a threat of violence to constitute obstruction, those holdings were superseded by the 1986 amendment.

6

bench warrant an officer was attempting to serve, *Hudson* [*v. State*,] 135 Ga. App. [739,] 742-743 (3) [(218 SE2d 905) (1975)]; (5) wilfully lied to an officer, who was trying to execute an arrest warrant, about the present location of the arrestee, *Duke v. State*, 205 Ga. App. 689 (423 SE2d 427) (1992); and (6) deliberately misled the first responding officer about his role in a car wreck, *Wells v. State*, 297 Ga. App. 153, 154 (1) (676 SE2d 821) (2009).

*Harris v. State*, 314 Ga. App. 816, 820-821 (1) (726 SE2d 455) (2012).

(b) A rational trier of fact could have concluded from the evidence presented by the State that Johnson knowingly and willingly hindered the officer in the lawful discharge of his official duties. See *Mayhew v. State*, 299 Ga. App. 313, 316-317 (1) (b) (682 SE2d 594) (2009) (sufficient evidence of misdemeanor obstruction where defendant repeatedly refused to obey officer's instructions to calm down and step away while officer was interviewing person at whom defendant was screaming and cursing); *Harris v. State*, 276 Ga. App. 234, 236 (1) (622 SE2d 905) (2005) (defendant's conduct in refusing to obey officer's "lawful commands to wait and back off" sufficient to support misdemeanor obstruction conviction); *Cooper v. State*, 270 Ga. App. 346, 347 (606 SE2d 869) (2004) (defendant's conduct during execution of search warrant sufficient to support misdemeanor obstruction where defendant's yelling and confrontational demeanor in combination with refusal to sit down and

7

remain in one place forced officers to call for back-up out of fear that defendant's conduct would escalate; evidence sufficient even though pre-1986 obstruction elements erroneously applied), overruled by *Stryker*, supra, 279 Ga. App. at 495 n. 1; *Carter*, supra, 222 Ga. App. at 397-398 (1) (defendant's disruptive statements and conduct in refusing to leave home that was not her residence during police investigation sufficient to support misdemeanor obstruction conviction).[2]

2. In his remaining enumeration of error, Johnson contends that the trial court erred by refusing to give seven jury charges "all of which addressed the issues of free speech and the limited circumstance under which speech alone can be considered obstruction." This contention has no merit.

"A requested charge must be legal, apt, and precisely adjusted to some principle involved in the case and be authorized by the evidence. If any portion of the request to charge fails in these requirements, denial of the request is proper." (Citation and punctuation omitted.) *Grant v. State*, 295 Ga. 126, 131 (5) (b) (757 SE2d 831) (2014). "There is no error in refusing to give a requested charge where the

_____

[2] Our opinion in *Harris*, supra, 314 Ga. App. at 819-822 (1), does not require a different result, because in this case, unlike *Harris*, the State presented evidence of "something more" than mere argument and expressions of frustration toward a police officer. Specifically, Johnson ignored three requests to calm down and refused to leave the property when asked to do so.

8

applicable principles are fairly given to the jury in the general charge of the court."
(Citations and punctuation omitted.) *Riley v. State*, 268 Ga. 640, 643 (5) (491 SE2d 802) (1997).

Johnson relied upon cases that have been overruled or disapproved subsequent to the 1986 amendment to OCGA § 16-10-24 to support five of his requested charges (Charges Two through Six). Johnson's remaining requests to charge were either adequately covered by the general charge of the court on obstruction or not precisely adjusted to the evidence. As noted above, the State presented evidence of "something more" than mere argument and disagreement with the police officer to support Johnson's conviction. The trial court therefore did not err by refusing to give these charges.

*Judgment affirmed. Ellington, P. J., Doyle, P. J., Dillard and Branch, JJ. concur. Barnes, P. J., and Miller, J. dissent.*

A14A1302. JOHNSON v. THE STATE.

BARNES, Presiding Judge, dissenting.

With this opinion, the majority has given law enforcement officers total discretion to establish the guilt of anyone publicly voicing complaints about their actions. All an officer needs to do is testify that he "had to" stop whatever he was doing and turn his attention to the complainer, thus demonstrating the necessary element of obstructing or hindering a law enforcement officer in the lawful discharge of his official duties. In my view, this interpretation of the obstruction statute is overbroad and unconstitutional, and I respectfully dissent.

"Although we have held that words alone can constitute obstruction, we have found no case upholding an obstruction conviction based solely upon a defendant's act of speaking to, remonstrating with, or even criticizing an officer during the performance of his duties." *Harris v. State*, 314 Ga. App. 816, 820-821 (1) (726 SE2d 455) (2012). The officer in this case chose to stop what he was doing to confront Johnson and tell him to be quiet, and when he would not do so, the officer arrested him. But the officers on the scene created the very circumstances about which Johnson was complaining, and to prosecute him for refusing to be quiet about it is the very essence of a First Amendment violation.

"A search warrant commands the search and gives the executing officer the authority to conduct such. OCGA § 17-5-23. The warrant delineates the scope of the search and directs the execution within such boundaries. OCGA § 17-5-24." *State v. Rocco*, 255 Ga. App. 565 (1) (566 SE2d 365) (2002). Absent appropriate exigent circumstances, evidence seized from premises without a proper warrant may be inadmissible at trial. *Teal v. State*, 282 Ga. 319, 326 (2) (647 SE2d 15) (2007).

So whether the police are executing a search pursuant to a valid warrant or not is important information, because absent exigent circumstances, officers searching a house without a valid warrant are trespassers conducting an illegal search. *Teal*, 282 Ga. at 326 (2); *Shafer v. State*, 193 Ga. 748, 755 (2) (20 SE2d 34) (1942). "An officer undertaking to execute a search warrant should have the warrant in his possession or so immediately at hand that it may be exhibited as authority for making the search," and a warrant is not in the officer's possession when it is "some distance from the scene of the arrest." *Shafer*, 193 Ga. at 755; see also *State v. Rocco*, 255 Ga. App. at 565.

The officers executing the search about which Johnson was loudly protesting did not have a warrant in their possession when they kicked in the door, and Johnson's outrage was understandable. The evidence is undisputed that the officers

picked up Johnson's son during a traffic stop, went to the son's house, broke into the house without a warrant in hand, and began searching the premises. When the son's mother returned home and asked to see their warrant, they told her they would show it to her when they were done and then ignored her and continued their search for an hour before one of them finally left the scene and returned with a warrant. A cousin stood outside with the mother, loudly objecting to the apparently warrantless forced entry and search, when Johnson arrived on the scene. As far as he or any other civilian there knew, the officers had arrested Johnson's son and broken into the house illegally.

The arresting officer testified that he did not shoot his final picture of the house and go inside to continue taking photographs because Johnson was standing there "hollering and cussing" and the officer did not know "what [Johnson] was going to do." But the officer conceded that Johnson did not physically try to stop him from taking photographs or block his view, and that he could have taken his last picture and walked into the front door to finish documenting the scene. Moreover, while the officer said that Johnson's "hollering and screaming got everybody else yelling and screaming," the only other people mentioned besides his son's mother and cousin were a couple of people in another duplex who were getting "a little anxious and

3

wanted to get a little mouthy as well" but had not come to the scene. Mere argument or expressions of frustration toward a police officer, without "something more," is not enough to sustain a conviction for misdemeanor obstruction. *Harris*, 314 Ga. App. at 821. Here, absent "something more," the evidence is insufficient as a matter of law to constitute obstruction.

The majority concedes that the only acts that could possibly constitute "something more" that just speech were Johnson's failure to calm down when asked to do so and his refusal to leave the property. In other words, he did not shut up and leave. But it was the officer's choice to stop what he was doing and remonstrate with Johnson. And when the officer ordered Johnson to be quiet and go away or he would be arrested, Johnson's response was to turn around, put his hands together, and tell the officer to go ahead and jail him but that would not change the illegality of the search. That is hardly an act of obstruction. It is an act of protest.

For these reasons, I respectfully dissent to the majority opinion. I am authorized to state that Judge Miller joined in this dissent.

4